W. A. SMITH, Appellant, v. JOSEPH MILLER, R. I. GOLDEN, TEMPLE HILTON, E. FIELD, ROBERT NEIL AND J. S. STED, Original Defendants.

L. H. NOYES, Intervener, and JOHN H. NOYES, JOHN ROBINSON AND DOUGLAS STAMPER, Defendants and Appellants.

**Public Lands.** The act of congress granting swamp and overflow lands to the state passed September 28, 1850, and accepted by the state in 1853, was a grant *in præsenti*, and the act of General Assembly 1853 vested the title in the same manner in the respective counties.

WATERS: *Accretions.* A purchaser of public lands bounded by a river is not entitled to the land added thereto by a change in the course of the river and not formed by accretion.

LADD, J., takes no part.

*Appeal from Harrison District Court.*—HON. F. R.
GAYNOR, Judge.

FRIDAY, FEBRUARY 5, 1897.

ACTION in equity to determine and to quiet the title
to certain lands in Harrison county as between the
parties to this action. Decree was rendered dismissing
plaintiff's petition, from which he appeals. Decree was
also rendered against the defendants John H. Noyes,
W. A. Robinson, and Douglas Stamper, from which
they appeal.—*Reversed.* The issues and facts will suffi-
ciently appear in the opinion.

*J. S. Dewell* and *Charles Mackenzie* for appellants;
W. A. Smith, John H. Noyes, Douglas Stamper and
John Robinson.

*Jesse T. Davis* and *S. H. Cochran* for appellees
Joseph Miller, R. L. Golden, Temple H. Hilton, E.
Field, Robert Neil and J. S. Stead.

GIVEN, J.—I. This case relates to certain parts of
townships 79 and 80, Harrison county. During the
years 1851 to 1853 the United States caused a survey to
be made of said townships, the western boundary of
which was fixed by a meander line supposed to have
been along the east bank of the Missouri river. In 1858,
there being considerable land between said meander line
and the Missouri river, the government caused the same
to be surveyed into lots by one Davis, who established
another meander line west of the former, and as the
west line of his survey. There is now a considerable
tract of land west of Davis' meander line and the
present channel of the river. The lots platted by Davis
were conveyed to the county under the swamp-land
grant, and the plaintiff has title, through the county, to
VOL. 105 Ia—44

lots 7, 8, and 9, in section 5, township 79, range 80, and 3 and 4 in section 4—79—80. The contentions between the plaintiff and the original defendants are these: Plaintiff claims that the land now lying west of Davis' meander line and the river, and in front of his said lots 7, 8, and 9, is a part thereof, as accretions thereto. Said defendants claim that the land platted by Davis was formed by gradual accretion to the lands as originally surveyed, and belongs to the owners thereof, and that therefore the government had no legal right to survey or make title thereto, and that for that reason plaintiff has no valid title to said lots 7, 8, and 9. They deny that the land lying between Davis meander line and the river was gradually formed, but allege that in 1865 the river suddenly changed its channel, cutting said land off from the Nebraska side. Intervener, L. H. Noyes, is the owner of certain lots in the original survey, by conveyance without reservation, from the United States, through state and county, under the swamp-land grant. His said lots are bounded on the west by the meander line established by said original survey, and he contends that all the land now lying between his said lots and the river belong to him as accretions to said lots, and that therefore the government had no right to convey the same. Plaintiff, as the owner of said lots 3 and 4, in section 4, and the defendants John H. Noyes, Robinson, and Stamper, owning other lots in said second survey, deny that any of said land surveyed by Mr. Davis was formed by accretions. They allege that the original survey was not extended to the river; that the land surveyed by Davis was in existence at the time of the original survey, and was omitted therefrom, and, therefore, proper to be surveyed and conveyed as it has been.

II. There is no controversy as to the law applicable to this case. It is not questioned but that accretions belong to and pass with the land upon which they

are cast, nor is it questioned but that, by conveying land, the government or individual conveys all right to accretions thereafter attaching to the land conveyed. It is contended on behalf of appellants that the general government had not conveyed the lots in the original survey, now owned by the intervener, prior to the second survey in 1858, and therefore had the right to survey and convey the land included in the Davis survey, even if it was formed by accretion after the first survey. It will be observed that all the lands under notice were swamp lands. The act of congress granting swamp and overflow lands to the states was passed September 28, 1850, and was accepted by the state in 1853. The courts have repeatedly held that this was a grant *in præsenti*, and that the act of the general assembly in 1853 vested the title in the same manner in the respective counties. See *Bailey v. Callanan*, 87 Iowa, 108, and cases therein cited, and *Barrett v. Brooks*, 21 Iowa, 144. It is certainly clear that the general government, having thus parted with its title, had no right to convey the lands included in the Davis survey if they were formed by accretion. If that land was in existence at the time of the first survey, there is no question but that the government had a right to survey and convey it as was done.

III. Owing to the number of parties to this action, and their various interests and claims, the pleadings and proofs are quite voluminous, yet the controlling issues of fact are these: Was the land included in the Davis survey so formed as to constitute an accretion to the adjoining lands in the original survey? Was the land now lying between the meander line of the Davis survey and the present channel of the river formed by accretion, or was it severed from its former connection by a sudden change in the course of the river? The testimony as to the character and condition of these lands, and the action of the

river at and after each of these surveys, is voluminous
and conflicting, and would require more space than
should be given to set it out. We have studied it with
care, and in the light of the respective claims and able
arguments of counsel. It was the duty of these survey-
ors, in making those surveys, to have extended the lines
to the river, and, in the absence of a showing to the con-
trary, we must presume that they did so. We think that
it is shown by a preponderance of the evidence that the
first survey was not extended to the then bank of the
river, but was established with reference to a body of
water known as "Home Schute." In times of high
water there was a current from the river passing
through Home Schute, and it is shown that the first sur-
vey was made at a time when the waters were high. It
seems probable that Home Schute was taken for the
channel of the river, but, be that as it may, it does
appear that dry land lying east of Home Schute was not
included in the first survey. The meander line of that
survey only extended for a short distance along the east
bank of Home Schute, and then bore eastward from it,
thus omitting said dry land. The extent and condition
of the land, as to timber and otherwise, included in the
Davis survey, leave but little room to doubt that it was
in existence substantially in its present form when the
first survey was made. In coming to this conclusion
we do not forget the fact that unusual changes do occur
in the action of that river, but we do not think it is
shown that the large body of land surveyed by Mr. Davis
was, or could have been, formed by the gradual process
of accretion during the short time that intervened
between the two surveys. It may be that some small
places within the Davis survey were formed by the
action of the water, but they are not shown to be of any
considerable extent, nor are the claims of the parties
based thereon. Our conclusion is that the land included

in the Davis survey were in existence substantially in their present form and condition, at the time of the first survey; that they were omitted from that survey, and that the government had the legal right to survey and convey the same as it did. It follows that no part of this land belongs to the abutting lands within the first survey as accretions thereto, and that those having title to lots within the Davis survey are entitled to hold the same.

IV. We now inquire as to the lands between the meander line established by Mr. Davis and the present channel of the river. We are satisfied that Davis' survey was extended to the then east bank of the river, and that here again the quantity and condition of the land forbid the conclusion that it was formed by the gradual process of accretion. The evidence shows that, some years after the Davis survey, the river suddenly changed its channel, whereby this land was severed from the Nebraska shore. Our conclusion is that neither of these parties owning land within the Davis survey is entitled to any part of this land as accretions, nor to disturb those in possession thereof. As each party asking relief bases his demand solely upon the claim of accretions to his land, and as we find that neither of them is entitled to such relief, their demands for relief should be dismissed, and the costs arising thereon taxed to the party asking relief. The decree of the district court is reversed, and the case will be remanded for decree in harmony with this opinion.— REVERSED.

LADD, J., takes no part.

SUPPLEMENTAL OPINION.

MAY 23, 1898.

ACTION to quiet title, and a decree from which the plaintiff and certain defendants appealed.—*Reversed.*

J. S. Dewell and Charles MacKenzie for appellants.

Jesse T. Davis and S. H. Cochran for appellee.

Per Curiam. The questions of fact in this case are much confused. It is now before us on re-hearing, which we granted for a more careful review of the evidence. The result of our former consideration was a practical modification of the judgment of the court below, reversing the judgment only as to the intervener, Noyes. The case has been re-argued and re-considered; five judges of this court having given the record a separate examination, besides an extended discussion in consultation. This extended and careful consideration of the case has served only to convince us of the correctness of our former conclusion. We regard our conclusions of fact as being in accord with the weight of the evidence, and the result seems entirely equitable. The former conclusion is adhered to, and the judgment as therein stated will stand REVERSED.

LADD, J., took no part.