Wilson L. Ogden, Appellant, v. W. D. Buckley *et al.*, Appellees.

**Swamp Land Grant:** TITLE OF STATE. The swamp land grant of 1850, directing the secretary of the interior to make a list and plats of the swamp and overflowed land granted to any state, and transmit them to the governor, and "at the request of said governor cause a patent to be issued to the state therefor, and on that patent being issued the title in fee simple to said lands shall vest in the state," did not convey a present title to the state of all the swamp and overflowed lands within the state, but only an inchoate right to acquire title by patent and therefore a county, by selling all its swamp or overflowed land, passed no title to land never surveyed, listed or platted.

*Appeal from Woodbury District Court.*—Hon. Geo. W. Wakefield, Judge.

SATURDAY, APRIL 12, 1902.

ACTION in equity to quiet title to land. Petition dismissed by the district court, and plaintiff appeals.—*Affirmed.*

*Edwin J. Stason* for appellant.

*Sullivan & Griffin* and *Buckley & Calderhead* for appellees.

WEAVER, J.—Plaintiff alleges that he is the owner of a large tract of land constituting the bed or area of what is known as "Sand Hill Lake," in Woodbury county of this state. The basis of this claim is that this land was "swamp and overflowed," within the meaning of the swamp-land grant of 1850; that the title thereto passed, by the terms of said grant, to the state of Iowa, and by act of the legislature of Iowa to Woodbury county, from which, through several mesne conveyances, it is now vested in plaintiff. The defendants deny that plaintiff has any title to the property, and allege that Sand Hill Lake was at the date of the swamp-land grant a lake in fact; that it was so found and recognized in making the original government survey; that it was by said survey meandered and segregated from lands capable of cultivation and reclamation; that they purchased and became, and now are, the owners of lands lying and bordering upon said lake; that by gradual and imperceptible reliction of the waters of said lake the bed has been to a great extent uncovered, and that thereby they have become and are the owners of such uncovered lands as accessions to the tracts so purchased by them. The district court, having heard the evidence, entered a decree to the effect that neither plaintiff nor the defendants had any title to the land, the real ownership being in the state, and from this finding plaintiff alone appeals.

VOL. 116 IA—23

The plaintiff must recover, if at all, on the strength and sufficiency of its own title, and not upon the weakness of the claim put forth by the defendants. If, therefore, he has failed to establish his own right in such manner as to call into activity the powers of a court of equity in his behalf, we need not go into other questions raised by the answer. It is conceded or shown without dispute that in the original government survey of lands the area now in controversy was recognized as a lake, and its shores were meandered as was usual in surveying around the inland lakes of this country. Neither then nor at any time since then has the United States or the state made any survey or subdivision of the lake or lake bed. So far as shown, neither the secretary of the interior nor the land office of that department has ever listed or platted these lands as "swamp or overflowed," or ever transmitted such list or plat to the state of Iowa or its governor. Neither is it shown that the state or the governor thereof has ever made application or request to the interior department for any patent to said lands. Taking these undisputed facts, and assuming for the present that these lands were in fact swamp, instead of lake, at the date of the grant, let us examine the plaintiff's claim of title. He shows that some years ago the county of Woodbury sold all the swamp lands to which it had become or might still become entitled to the Sioux City & Pacific Railway Company, the sale being by contract or deed made in general terms, and describing no specific tract or tracts; that thereafter the railroad company conveyed by like general terms all its rights under said deed or contract to the Missouri Valley Land Company, which company quit-claimed to the plaintiff "all that part" of certain named sections, "embraced within the meandered lines of Sand Hill Lake as shown by the original government survey," etc. This showing, with the field notes of the original survey and the acts of congress and of the state legislature, constitute the entire chain of title presented by the plaintiff. Assuming, then, that this land was in fact swamp at the date

of the grant has the title thereto ever passed to plaintiff? It is to be remembered that the general government does not know, and has no direct dealing with, the individual holders of swamp-land titles. The grant was from the United States to the state of Iowa. If plaintiff has any title, it is because the state first obtained it, and granted it to Woodbury county, under whose conveyance he claims. It follows, on the other hand, that, if title never passed from the United States to the state under the grant of 1850, then plaintiff has none which he can assert in this action. Turning to the grant itself, we find an explicit statement for our guidance. The secretary of the interior is there directed to make an accurate list and plats of the swamp and overflowed lands granted to any state, and transmit them to the governor of said state, and "at the request of said governor cause a patent to be issued to the state therefor, and on that patent being issued the title in fee simple to said lands shall vest in the state." As we have already seen, the land in controversy has never been surveyed, and consequently no list or plat thereof could be furnished by the secretary of the interior; and, no patent having been issued or delivered, the title never vested in the state, and the conveyance by Woodbury county could neither create nor pass title to the plaintiff.

It is said by appellant—and he is sustained by many authorities—that the swamp-land grant operated *in praesenti,* and of itself vested in the state a right to all the public lands which were "swamp or overflowed" within its borders. Counsel fails to distinguish between the right to obtain title and title in fact, and the same oversight characterizes some of the cases upon which he relies. The authoritative and controlling interpretation of the act of congress rests with the supreme court of the United States, and when duly announced, we are required to follow it, without regard to prior holdings of state courts. That interpretation, as applied to this case, we find in *Rogers Locomotive Mach. Works v. American Emigrant Co.,* 164 U. S. 559 (17 Sup. Ct. Rep.

188, 41 L. Ed. 252). In that case certain lands were shown to be swamp at the date of the grant of 1850, but they had never been certified or patented to the state in the manner provided by the act. In 1856 another land grant was made to the state in aid of a railroad, but expressly reserved from its operation lands already granted for other purposes. Under this latter grant the land was certified and patented to the railroad company. The claimant under the swamp-land title, relying upon the theory that the grant of 1850 operated *in praesenti,* sought to defeat the railroad title by proof of the actual swamp character of the land; thus assuming precisely the position maintained by the appellant herein. But the court says "While, therefore, as held in many cases, the act of 1850 was *in praesenti,* and gave an inchoate title, the lands needed to be identified as lands that passed under the act, which, being done, and not before, the title became perfect as of the date of the granting act." Further along in the same opinion, speaking of the claim based on the actual character of the land, it is said: "This contention assumes that the lands in question were, within the meaning of the act of 1850, swamp and overflowed lands. But that was to be determined in the first instance by the secretary of the interior. It belonged to him primarily to identify all lands that were to go to the state under the act of 1850. When he made such identification, *then and not before,* the state was entitled to a patent, and on such patent the fee-simple title vested in the state. The state's title was in the outset an inchoate one, and did not become perfect as of the date of the act until a patent was issued." The application of this authority to the case before us is too obvious to require explanation. No title to this land has ever passed from the United States to the state of Iowa under the act of 1850, and the plaintiff, being, therefore, himself without title, is not in position to question the claims of the defendants.

II. It is conceded by counsel that the character of the land, if it be competent to consider that question at all, must

be ascertained as of the date of the swamp-land grant. An attempt at this time to prove conditions existing at so remote a period must necessarily involve much uncertainty. But few witnesses remain who can speak of their actual personal knowledge and observation, and those few labor under the inevitable infirmities of age and memory. The great changes which have taken place within the memory of the younger men in the wet lands and inland waters of the West forbid our relying upon present conditions as proof of facts existing more than a half century in the past. The record of the surveys then made and approved by the land department of the government carry with them a presumption of correctness,—a presumption which, in the opinion of the writer, should at this late date be well-nigh conclusive. But, giving such record only *prima facie* effect, we think the plaintiff's evidence is clearly insufficient to establish any mistake in the survey; and if his theory of the effect of the act of 1850 to pass title to swamp lands without patent or other formal conveyance is correct, the testimony would still be insufficient to justify a decree in his favor.

III.   The holding of the district court that the state is the real holder of the title to these lands we need not review. The plaintiff not being entitled to recover, it is immaterial, under the record as presented, whether the state has any just claim in the premises, or whether defendants have obtained title by reliction of the waters of the lake. We do not attempt to pass upon either proposition.

The decree of the court below is AFFIRMED.