# IOWA *v.* ROOD.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 9. Argued October 14, 15, 1902.—Decided November 17, 1902.

Where the title claimed by the State of Iowa to land formerly the bed of a lake rested solely upon the proposition that the State became vested, upon its admission into the Union, with sovereignty over the beds of all lakes within its borders, and upon the act of the General Government in meandering such lakes and excluding from its survey of public lands all such as lay beneath their waters, and the Supreme Court of the State has decided adversely to the State and in favor of one who claimed under the act of Congress of September 28, 1850, known as the swamp land act, there is no question involving the validity of any treaty or statute of the United States or the constitutionality of any state statute or authority which gives this court jurisdiction.

Neither article III of the treaty with France ceding Louisiana, article IV, section 3, of the Constitution of the United States, nor the act of Congress of 1846, admitting the State of Iowa into the Union on an equality with the original States, has even a remote bearing upon the question of title of the State of Iowa to the land beneath its lakes.

The mere fact that the plaintiff in error asserts title under a clause of the Constitution or an act of Congress, or that such act or a patent of the United States appears in the chain of title, does not constitute such a right, title or immunity as to give the Federal courts jurisdiction, unless there is either a plausible foundation for such claim, or the title involves the construction of the act or the determination of the rights of the party under it.

The action of the government surveyors in segregating and setting apart the lakes in question by meander lines from the public lands and the approval of such survey by the Commissioner of the General Land Office was not an adjudication by the Government of the United States by its duly authorized officers and agents, that the lake so segregated and set

apart was the property of the State of Iowa and not a part of the public domain. It was beyond the powers of a government surveyor to determine the title to such lands, or to adjudicate anything whatever upon the subject.

THIS was a controversy over about 800 acres of land lying in the bed of what is known as Owl Lake, in Humboldt County, Iowa. The original plaintiffs, the appellees in this case, claimed under the act of Congress of September 28, 1850, commonly known as the swamp land grant. Defendants' position was that the lands were unsurveyed lands belonging to the national government, subject to entry under the homestead and preëmption laws, under which they had made entry. The State of Iowa intervened and claimed to own the land in virtue of its right of sovereignty over the beds of all lakes meandered by the general government.

The suit was originally instituted by a petition in equity filed in the District Court of Humboldt County by Edwin O. Rood and others against George A. Wallace and others, founded upon allegations : (1) that the lands were conveyed to the State under the swamp land act of September 28, 1850, and thence by intermediate conveyances to the plaintiff ; (2) that at the date of this act the lands were in fact swamp and overflowed lands, and continued to be, until Pearsons, plaintiffs' grantor, received the title, marshy and unfit for cultivation, without artificial drainage. That in 1884, Pearsons began to reclaim the land by ditches, building fences around it, and for several years used and occupied it for pasturage, and spent a large amount of money in draining, reclaiming it and making it fit for cultivation ; (3) that defendants have taken possession, and built a cabin upon the land, and are interfering with the plaintiffs in their use and enjoyment of it.

Wherefore an injunction was prayed.

A demurrer to this bill was overruled and an answer filed in general denial of the petition.

Thereupon the State of Iowa filed a petition of intervention, alleging that the land in question was a part of the bed of Owl Lake, and did not constitute any part of the land which the United States government was authorized or empowered to sell.

That the State was duly admitted into the Union in 1846, and, as a sovereign State, became the owner of all the lakes within its borders, subject to the right of the public to use the same, and that the title to the soil was in the State. That in surveying the public lands adjoining the lake the same was meandered, and the land up to the meander lines sold by the United States to different persons, and after such survey and sale the United States had no right, title or interest in any part of the lake bed, and that the same had passed to the State upon its admission to the Union.

The petition denied that the land described was within the swamp land grant, and averred that the act of the plaintiffs and their vendors in draining the said lake and drawing off the water was unlawful.

Wherefore the State prayed a decree against both plaintiffs and defendants, quieting its title to the land, and for a writ of possession removing both parties therefrom.

Defendants Wallace and others subsequently amended their answer to the effect that the lands were unsurveyed lands, subject to entry by settlers, and that defendants had entered the lands as homesteads, built houses thereon, and occupied the same as homes. That, at the date of the swamp land act, the lands were covered by water from six to fifteen feet in depth, with well-defined shores and high banks upon the south and east sides, and navigable by ordinary steamboats. That the lands were never swampy, and never came within the meaning of the grant as swamp and overflowed lands. And that whatever rights plaintiffs might have in the land were junior and inferior to those of defendants.

Plaintiffs thereupon amended their petition by averring that since the commencement of the suit the lands had been patented to the State under the swamp land act of 1850; and answered the petition of the intervenor, alleging that by the proper officer of the government the character, quality and condition of said lands were duly adjudicated in the manner provided by law, and that the title of the United States passed through certain patents mentioned in amendments to plaintiffs' petition, and finally inured to the benefit of the plain-

tiffs, and that said patents have never been set aside nor canceled.

Testimony was taken by the plaintiffs, and a decree entered dismissing the intervenor's petition, and quieting the title in this and several other cases involving the same facts, in the plaintiffs. On an appeal taken to the Supreme Court of Iowa, the judgment of the District Court was confirmed. 109 Iowa, 5. Whereupon the State sued out a writ of error from this court.

*Mr. Charles Mullan,* attorney general of the State of Iowa, for plaintiff in error.

*Mr. R. M. Wright* and *Mr. J. P. Dolliver* for defendants in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

Motion is made to dismiss this case upon the ground that no Federal question is involved; or if there be such question, that there was another non-Federal question, the decision of which was sufficient to sustain the judgment, irrespective of what the decision of the Supreme Court may have been upon such Federal question.

1. From the foregoing abstract of the pleadings it will be seen that the title set up by the State rests solely upon the proposition that it became vested, upon its admission into the Union under the act of Congress of December 28, 1846, 9 Stat. 117, with sovereignty over the beds of all lakes within its borders, and by the act of the general government in meandering such lakes, and excluding from its survey of public lands all such as lay beneath their waters. This clearly does not involve the validity of any treaty or statute of the United States, or the constitutionality of any state statute or authority, so that if jurisdiction exists in this court, it must be by reason of the claim of a title, right, privilege or immunity under the Constitution, or an authority exercised under the United States, the

decision of which was against such title, right, privilege or authority.

The real question then is whether the sovereignty of the State over the beds of its inland lakes rests upon some statute or provision of the Constitution, or upon general principles of the common law which long antedated the Constitution, and had their origin in rights conceded to the Crown centuries before the severance of our relations with the mother country. If the latter, then the State must look to the decisions of this court, recognizing and defining such rights and determining how far they are inherited, first, by the United States as the successor of the Crown, and second, by the several States upon their admission into the Union. This would not involve a construction of the Constitution, nor of any title derived thereunder, but a determination of the title of the Crown to lands beneath the beds of inland lakes and of the respective rights of the States and the general government as successors thereto.

In support of our jurisdiction the State relies (1) upon art. III of the treaty with France for the cession of Louisiana, 8 Stat. 200, which merely provides that "the inhabitants of the ceded territory shall be incorporated in the Union of the United States and admitted as soon as possible, according to the principles of the Federal Constitution, to the enjoyment of all the rights, advantages and immunities of citizens of the United States;" (2) the provision of the Constitution, art. IV, sec. 3, which merely declares, with certain immaterial qualifications, that "new States may be admitted by the Congress into this Union;" and (3) upon the act of Congress of 1846, admitting the State of Iowa into the Union, with the provision that it should be admitted on an equal footing with the original States in all respects whatsoever.

None of these provisions was questioned by the Supreme Court of Iowa in its opinion, but neither of them has even a remote bearing upon the question of the title of the State to the land beneath its lakes. Indeed, the argument now made by the Attorney General, that the title of the State depends upon the construction given to this act of Congress, is quite inconsistent with his first assignment of error upon the merits,

which charges the court with error "in not holding that the beds of all the meandered lakes and streams in the State of Iowa belong to said State in trust for the public by virtue of its sovereignty, and that this right *does not depend upon any act of Congress or any grant from the United States*." In other words, the State is put in the dilemma of insisting, for the purpose of sustaining the jurisdiction of this court, that the title of the State is dependent upon the proper construction of these three instruments, and, for the purpose of sustaining its case upon the merits, denying that the title depends upon either of them. This is an attempt to blow hot and cold upon the same question.

The mere fact that the plaintiff in error asserts title under a clause of the Constitution, or an act of Congress, is not in itself sufficient, unless there be at least a plausible foundation for such claim. A party may assert a right, title, privilege or immunity without even color for such assertion, and if that were alone sufficient to give this court jurisdiction, a vast number of cases might be brought here simply for delay or speculative advantage. *New Orleans Waterworks Co.* v. *Louisiana,* 185 U. S. 336.

It is equally clear that the mere fact that an act of Congress or a patent of the United States appears in a chain of title does not constitute such a right, title or immunity as gives the Federal court jurisdiction, unless such title involves the construction of the act or the determination of the rights of the party under it. *De Lamar's Nevada G. M. Co.* v. *Nesbitt,* 177 U. S. 523.

The case of the *City of New Orleans* v. *Armas,* 9 Pet. 224, is directly in point. Plaintiffs claimed a parcel of land in the city of New Orleans by incomplete title from the Spanish government, which was, however, confirmed under the laws of the United States and a patent issued therefor. The city claimed the land as a part of a quay dedicated to the city in the original plan of the town, and therefore not grantable by the king. The state court gave judgment for the plaintiffs, which was affirmed by the Supreme Court, and the city sued out a writ of error. The court held, through Chief Justice Marshall, that to

sustain its jurisdiction it must·be shown that the title set up by the. city was protected by the treaty ceding Louisiana to the United States (the treaty involved in this case), or by some act of Congress applicable to that title. It was held that the third article of the treaty, above quoted, did not embrace· the case, and that the act of Congress admitting Louisiana into the Union, which is identical in language with the act admitting. Iowa, could not be construed to give. appellate jurisdiction to this court over all questions of title between citizens of Louisiana; that the case involved no principle upon which this court could take jurisdiction which would not apply to all the controversies respecting titles originating before the cession of Louisiana to the United States, and that "it would also comprehend all controversies concerning titles in any of the new States, since they are admitted into the Union by laws expressed in similar language." The writ of error was dismissed. This case is conclusive against the existence of a Federal question in the case under consideration.

2. We are also asked to sustain the jurisdiction of this court upon the ground that the action of the government surveyors in segregating and setting apart the lake in question by meander lines from the public land, and the approval of such survey by the Commissioner of the General Land Office, was an adjudication by the government of the United States, by its duly authorized officers and agents, that the lake so segregated and set apart was the property of the State of Iowa and not a part of the public domain.

We do not so interpret the action of these officers. They undoubtedly did survey the lands adjoining this lake and meander the lake itself, but they determined nothing as to the title of the land beneath its waters—a determination which would have been wholly beyond their powers; but simply omitted those lands from the survey, and left their title to be subsequently determined either by state or Congressional action. It was obviously beyond the powers of a government surveyor, or of the Land Office, to determine the title to these lands, or to adjudicate anything whatever upon the subject.

Had the decision of the Supreme Court been adverse to the

plaintiffs, who claimed title under the swamp land act, it is possible that a writ of error might have lain from this court, but we have frequently held that to sustain such writ, the decision must be adverse to a right claimed under an act of Congress, or to the exercise of an authority granted by the United States. *Baker* v. *Baldwin*, decided this term, *ante*, p. 61.

The writ of error must be

*Dismissed.*