STATE OF IOWA, Appellant, v. TERENCE THOMAS et al. Appellees.

**APPEAL AND ERROR:** Briefs—Form and Requisites—Points Originally Relied on for Reversal—Conclusiveness. It is important that an appellant develop and clearly state, in his original brief, the points or propositions relied on for a reversal, because he must stand or fall thereon. (Rule 53.) An attempt, through a subsequently filed "amended brief", to depart from the propositions contained in the original brief may be successfully met by a motion to strike.

PRINCIPLE APPLIED: Plaintiff (the state) sought to enjoin certain defendants from moving sand from below the high-water mark of a navigable lake. On appeal from an adverse decree, the state, in its original brief, alleged, as the *sole* point or proposition relied upon, "that the court erred in finding that the high-water mark was not the line of the upper edge of the bank which

separated the abrupt banks or sloping and barren beaches from the land fit for cultivation'', and in finding such high-water mark at another point. By a later amendment to the brief, appellant assigned the proposition ''that, even upon the theory that the trial court was right in its determination of the true location of the high-water mark'', an injunction should have issued. *Held*, the appellant must stand on his original proposition.

NAVIGABLE WATERS: ''High-Water Mark''—Definition. The *bed* of a lake is that body of land which, by the more or less continuous action of the water, is denuded of ordinary vegetation and rendered unfit for agricultural purposes. The outer line of this *bed* and the *high-water mark* are conterminous. It follows that the outer rim or top of the steep banks of the basin in which a body of water lies is not necessarily the high-water mark.

*Appeal from Buena Vista District Court.*—D. F. COYLE, Judge.

WEDNESDAY, JANUARY 12, 1916.

ACTION in equity to restrain the alleged wrongful taking of sand and other material from within the high-water mark limits of the body of water known as Storm Lake, in Buena Vista County, Iowa. There was a decree defining the level of the lake and the high-water mark or boundary thereof. It also enjoined certain defendants from trespassing upon the lands within such boundary and dismissed the petition as against other defendants. From this decree, the State has appealed.—*Affirmed.*

*George Cosson*, Attorney General, and *C. A. Robbins*, Assistant Attorney General, for appellant.

*Faville & Whitney*, for appellees.

WEAVER, J.—Storm Lake is alleged and conceded to be a navigable body of water, and the title to the bed thereof, including all the lands within the high-water boundary, is held by the state of Iowa in trust for the use and benefit of the public. The petition filed herein alleges that the defendants, some of whom own lands bordering upon the lake, have encroached upon the bed thereof, and wrongfully and with-

out authority have removed large quantities of sand therefrom and threaten to continue such trespasses to the irreparable injury of the lake and its public and convenient use, and a perpetual injunction against such acts is sought. Several defendants made default, and injunction was decreed against them as prayed. Other defendants answered, alleging, in substance, that, while they have removed sand from the vicinity of the lake, all their acts in that respect have been done upon their own lands or upon the lands of others under whose authority or permission the work has been performed, and not within the limits of the lake bed or land, the title to which is in the state.

I. As will be seen from the foregoing statement, the appeal turns upon a single question of fact, on which the finding of the trial court was adverse to the appellant, and, to some extent perhaps, upon the proper or

1. APPEAL AND ERROR: briefs: form and requisites: points originally relied on for reversal: conclusiveness.

legal definition to be given to the phrase "high-water mark", as applied to the boundary of lake beds.

Counsel for the state preface their argument with what they deem to be the controlling inquiry, as follows:

"There is no real dispute as to the fact and if the high-water mark as found by the court is the true high-water mark, or if such true high-water mark is not higher than the high-water mark fixed by the court, then the decree of the court below is right and should be affirmed. However, the appellant contends that the court erred in finding that the high-water mark which fixes the boundary or limits of the plaintiff's ownership of the bed and shore of said lake is not the line of the *upper edge of the bank* which separates the abrupt banks or sloping beaches which are barren of trees or vegetation from the land that is fit for cultivation, and in finding that such high-water mark is the high-water mark in fact which was found to be that line marked by the water when still and was found to be and fixed at one hundred and

36-100 feet above an assumed datum plane or bench mark shown by the plat, Exhibit A, identified by the witness Mc-Collough, which plat was' made a part of the decree.''

By an amendment, so-called, to its argument, filed some months later, appellant sought to modify or withdraw its concession above quoted, in so far as it relates to the defendants, Terence Thomas and W. A. Barnes, and to insist that, even upon the theory ·that the trial court was right in its adjudication of the true location of the high-water mark, the evidence still established trespasses by the defendants named, which ought to have been enjoined. This amendment appellees have moved to strike, as being an entire departure from the points and propositions stated in the original brief of the appellant and against the provisions of Section 53 of the Rules of this court, by which ''no alleged error or point not contained in the statement of propositions relied upon for reversal shall be raised afterwards, either by reply brief or in oral or printed argument or on petition for rehearing''. We are of the opinion that the objection is well taken, and that the case must be disposed of by us upon the grounds selected and argued by appellant in its original presentation of the case. We hold this the more readily from the fact that an examination of the record makes it reasonably clear that, if the trial court was right in its finding as to the true boundary or high-water mark of the lake, plaintiff failed to make a case against any of the appellees.

II. The state, by its own engineers and other witnesses, offered evidence as to former official and unofficial surveys of the lake and its levels and as to the visible water marks upon rocks and other more or less permanent monuments around the lake border, all of which tended to confirm and establish the fact that the high-water mark or line of the lake was at a point or level approximately 100.36 feet above an agreed or assumed datum plane. The level thus fixed upon was also shown to correspond closely with the boundary visible to com-

2. NAVIGABLE WATERS: "high-water mark": definition.

mon observation between the soil covered with grasses and other land vegetation and the worn or denuded border of the lake covered by sand or gravel, or weeds such as are ordinarily found between the extremes of high water and low water in our inland lakes. The trial court appears to have accepted the state's theory of the fact situation as indicated by the evidence adduced, and the decree appealed from gives to the appellant the full benefit of the showing so made and establishes the high-water mark at the point located by its engineer.

It is contended, however, that, within the meaning of the law, the high-water mark is not the point or line to which the lake reaches when filled to its high-water stage, but is the line of the top of the abrupt bank, if any, which separates the denuded border surrounding the lake from the higher adjacent lands. None of the authorities cited by the appellant affords support for its position in this respect. The question was before this court in *Houghton v. C. D. & M. R. Co.*, 47 Iowa 370, where, while recognizing the practical difficulty frequently encountered in applying it to a given situation, the term was defined as follows: High-water mark means what its language imports—a water mark. It is co-ordinate with the line of the bed of the water, and that only is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation and destroy its value for agricultural purposes.

This meaning of the words has been consistently reaffirmed and adhered to in every case since arising in which a disputed high-water mark has been considered. *Welch v. Browning;* 115 Iowa 690; *Bennett v. Nat. Starch Mfg. Co.,* 103 Iowa 207, 210; *State v. Jones,* 143 Iowa 402; *Merrill v. Cerro Gordo County,* 146 Iowa 330. It is the outer line or limit of the lake *bed,* and the lake bed is that body of land which the water *occupies* or covers sufficiently long or continuously to denude of ordinary vegetation, and makes unfit for agricultural purposes. The top of the steep banks, if any, surrounding a lake are quite sure to be variable in height,

rising from a mere foot or two in some places to bluffs of many feet in others; and to declare the upper edge or summit of these banks the high-water mark would be as contrary to all precedent as it is opposed to nature and the common knowledge and observation of mankind. The trial court did not err in rejecting the state's contention in this respect, or in establishing the high-water mark of the lake in accordance with the survey and report of the engineer.

The decree appealed from is, therefore,—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.