STATE OF IOWA, appellant, v. HARVEY E. NICHOLS AND ALL UN-
KNOWN CLAIMANTS to Government Lots 6, 7 and 8, and
North Half of the Southeast Quarter of Section 29,
Township 87 North, Range 47, in Woodbury
County, Iowa, excepting 8.8 acres in the
Southeast corner of said tract, appellees.

No. 47666.

(Reported in 44 N.W.2d 49)

SEPTEMBER 19, 1950.

Robert L. Larson, Attorney General, Kent Emery, Assistant Attorney General, and Bernard A. Brown, County Attorney, for appellant.

Charles M. Gasser, of Sioux City, for Harvey E. Nichols, appellee.

BLISS, J.—Plaintiff pleaded and argues that it is the owner of the property involved herein because it is a part of the bed of a lake which was a navigable body of water when Iowa was

admitted as a State, the title to which bed passed to it upon its admission, by virtue of its sovereignty. In its petition plaintiff also alleged that it has title to the property under a decree of January 15, 1934, quieting title in it, a copy of which decree it introduced in evidence. It also alleged in its petition that claim of title by defendant, Nichols, under a decree of July 19, 1946, quieting title in him against the State of Iowa and unknown claimants, which decree is based upon a tax title and other grounds, is of no merit because the land, as property of the State was not taxable. Plaintiff admitted that such decree was entered against it by default and that it never appealed therefrom.

Defendant bases his title by argument in this court, and by pleading and evidence below upon the following grounds: that although the plat and field notes of the original government survey in 1852 showed no land or exposed bed within the shore lines of this body of water, on January 6, 1896, under instructions from the Department of the Interior and its land commissioner, one William P. Hall, a United States Deputy Surveyor, surveyed within the shore lines of said body of water, which he designated "Brown's Lake," 758.31 acres of land which was omitted from the survey of 1852, as stated in the certificate of the commissioner, under date of January 30, 1900, filed with plat of the survey, May 24, 1909, in Woodbury County Plat Book 15, page 8; this hitherto unsurveyed land by the resurvey thereby became a part of the United States public domain and subject to sale; on October 31, 1906, President Theodore Roosevelt executed a patent granting to James I. Parker, Government Lots 6, 7, 8 and the N½ SE¼ of said Section 29, containing 158.15 acres, being the land involved in this controversy; Parker was in possession of the land and had built a house on it at the time of the Hall survey, as shown by his plat of it; the certificate of the county surveyor of January 3, 1899, states that for the purposes of taxation he had surveyed and made an auditor's plat of the same land that Hall had resurveyed for the United States Government about 1896, although the acreages of the auditor's plat differ somewhat from the Hall plat; the land claimed by Nichols, and involved in this suit, is described as Lots 4, 5, 6, 7, and 8 of the auditor's

plat; the parties stipulated .that this land for 1931 to 1938, inclusive, was taxed in the name of Win S. White, and sold at scavenger tax sale on January 23, 1935, to H. M. White for the delinquent taxes for the years 1931, 1932 and 1933, and the purchaser on November 10, 1937, assigned the certificate of sale and his interest in the land to J. M. Marsh who made a like assignment on April 14, 1938, to Florence Bubbs, to whom on April 15, 1938, the treasurer of Woodbury County issued his tax sale deed, and on June 1, 1942, Florence Bubbs and her husband executed to Harvey E. Nichols, defendant, their quit-claim deed to all of this property (end of stipulation) ; on receipt of the deed, Nichols went into possession and occupancy of the property, built a small house on it and farmed part of it; his possession has been continuous and he has paid the taxes on it at all times since his purchase; his compliance with what is now section 448.15, Code of 1950, by filing, as therein required, his affidavit as a tax-title holder under a tax deed issued and recorded over two years previous that he was then in possession of said real estate and claimed title thereto by virtue of such tax deed, which claim was not contested by any adverse claimant, in the manner, and within one hundred twenty days from the filing of said affidavit, as required by what is now section 448.16 of said Code; the decree of July 19, 1946, quieting title to the land involved herein in the defendant and against the plaintiff, which plaintiff seeks to vacate in this suit; defendant alleged that the decree of July 19, 1946, was a prior adjudication against the plaintiff depriving it of the relief for which it prayed.

The cause was tried to the court on June 7, 1949, and after submission on written briefs and arguments, judgment and decree was rendered on October 12, 1949. The court found that the so-called lake designated as Brown's Lake was a bayou of the Missouri River that had become a shallow lake or slough, which was not navigable nor had been since Iowa was a State, and that at the time of the trial the State was engaged in extensive dredging operations for the purpose of deepening the water, but the area being improved was at a considerable distance from the land involved. It was the court's conclusion that the rules pertaining to navigable waters would not apply, but the rules stated in State v. Livingston, 164 Iowa 31, 145 N.W. 91, were

applicable and should be followed, and for these reasons plaintiff's petition should be dismissed and defendant should be given the relief prayed for in his cross-petition. By its decree the court dismissed the plaintiff's petition, and adjudged the defendant, Nichols, to be the owner in fee simple of the land claimed by the State, and the tax deed under which the defendant claimed title to be a valid deed, and the decree of the District Court of Woodbury County of July 19, 1946, to be a valid, existing judgment in full force and effect.

We agree with these specific findings and the decree of the court.

There is no dispute as to the authenticity of any of the exhibits or documentary evidence, although the parties disagreed as to the inferences to be drawn from some of them. It is true that plaintiff alleged in its petition that while the official records in the cause which ended with the decree of July 19, 1946, show that the State of Iowa was served by registered mail with the original notice with copy of the petition attached, as provided by statute, there was no record in the office of the Attorney General of Iowa indicating that notice of the action was received by that office, and that neither the Attorney General nor any member of his staff had any knowledge of the action, and that the signed return, showing the receipt of the registered mail containing the original notice in the clerk of court's office, was executed by a person not connected with the Attorney General's office. The plaintiff offered no evidence to sustain these allegations. The court files and record in the prior case were in the record and were affirmative evidence that proper notice of the action had been sent by the defendant to, and received by registered mail at, the Attorney General's office. The court in that case found that the State of Iowa had been duly served with the notice and that it had jurisdiction of the subject matter and the parties.

Plaintiff offered no evidence of the navigability of the lake or the depth of its water at any time. The plat and the field notes of the original government survey show that this body of water was not meandered as a lake, but as an arm or bayou of the Missouri River. Mr. Sayre, a civil engineer and the superintendent of Surveys and Titles, of the Conservation Com-

Plat of Survey of "Hoover's Island."

mission, so testified. On that plat it is marked "Bayou", and is shown as an open body of water with no land or island within its shore lines. Many years ago it was given the name of "Brown's Lake" and land within the lake was called "Hoover's Island", apparently because Samuel Hoover lived on it. The plat of William P. Hall, supra, is designated as a Plat of Survey of "Hoover's Island", and the body of water is marked "Brown's Lake." We set out here a photostat of the plat, reduced in size, which was introduced by defendant.

While the judgment in the case noted below is not binding upon the parties at bar, we call attention to it for the information it contains. It is not cited by either party. It involves "Hoover's Island" and is entitled, A. T. Bigelow v. Samuel Hoover et al., 85 Iowa 161–164, 52 N.W. 124, 125, 39 Am. St. Rep. 296, decided by this court May 16, 1892. Bigelow owned a government lot on each side of the lake's outlet. He sued Hoover and others who occupied Hoover's Island to quiet title to the island as an accretion to his lots, and for rents unpaid, and damages for timber cut and waste committed. Hoover et al. admitted Bigelow's ownership of the lots but denied that the island was any part of the lots or an accretion thereto. They alleged that Hoover's Island belonged to the United States; that about eighteen years before one Combs took possession of it intending to enter it under the pre-emption or homestead laws when it should come into the market; that he signed his right of pre-emption and by successive assignments the defendants acquired his rights, and had occupied the land for eighteen years with the intention to perfect title under the pre-emption or homestead laws as soon as the land was opened for such purpose. Trial was had to the court as in equity, and the court denied Bigelow the relief he prayed for, and found that defendants were in possession of the island, and that the accretions were adjacent to the island and the lots, and decreed that the accretions should be proportionately divided between them.

On Bigelow's appeal this court affirmed, and held (page 163): that a considerable portion of the island was quite elevated and entirely above high-water mark and was under cultivation by defendants, that "the plat of the government survey

made in 1851 does not show any island, but marks the space where the island now exists as 'bayou'. The testimony of a number of witnesses familiar with the locality shows, however, that an island did exist there prior to that survey, and the size and age of trees shown to have been cut from that land leaves no doubt in our minds but that an island existed there at and before the survey. * * * We conclude that, notwithstanding what appears in the government plat, the island did exist at the time of the survey as a separate and distinct body of land from the plaintiff's lots."

Defendant was the only witness for himself, and Sayre was the only witness for plaintiff. Sayre had no acquaintance with the lake prior to 1933. In September of that year he made a survey of Brown's Lake in Sections 28, 29, 32, and 33 in said Township 87. From his field notes he made a plat of his survey. The original plat (marked Exhibit B), apparently made for use in the quieting-title suit brought by the State of Iowa, which terminated in the decree of January 15, 1934, has been certified to us with other exhibits. For use in this trial, Mr. Sayre made a substantial replica of his original plat, photographically reduced in size, with some additions drawn thereon, which was also put in evidence. The original plat in legible figures shows the courses and distances of his survey. He found the area of the lake, approximately within the meander lines of the original government survey, to be 680.875 acres, not including the area of the so-called Hoover's Island as it was at the time of his survey. The area of the island is not shown. The part of the 680.875 acres which was under water he found to be 137 acres, lying in a narrow strip along the shore line of the east half of the perimeter of the lake bed. The water in the lake had diminished since Hall made his survey. The expanse of water at that time is shown in the plat herein set out. When Sayre made his survey and plat the upper end of the part of the lake bed under water terminated at about the center point of the north boundary line of Lot 7 in Section 29, and the lower end was near the east quarter section post of the section line between Sections 32 and 33. But a small tract, involved in this litigation, in the north part of Lots 6 and 7, was under water when Sayre

made his survey in September 1933. On the Sayre plat we find but one elevation marked, and that is at the water's edge of the submerged portion on the east line of Government Lot 5 in the NE¼ of the NW¼ of Section 33. The Sayre plat states that the shore line of the lake was 8.457 miles, but this must be of the entire lake bed and not just of the submerged portion. The decree of January 15, 1934, quieted title in the State to the 680.875 acres included within the courses and distances of the Sayre survey.

So far as the record shows, the first attention the State gave to this lake was about 1933, when Sayre made his survey. He testified that thereafter the Conservation Commission exercised control over the lake. He did not elaborate upon the nature or extent of that control. He also testified: "A ditch has been constructed which runs from the lake to the river. I surveyed, designed and supervised the construction of the ditch under the direction of the commission. I think that was in 1937. Gates have been installed to keep the lake filled. * * * The purpose of the ditch and gates which were installed in 1937 is to control the flow of water from the Missouri River into and out of Brown's Lake, and also to hold water in, in case Brown's Lake or the river get low."

There is no evidence of the width or depth or grade or capacity of the ditch constructed by the Conservation Commission between the basin of the lake and the Missouri River at the time of its construction or at the time of the trial in 1949. Neither is there any evidence of the dimensions of the gates constructed at the outlet, or of their capacity. Defendant testified that of the 158.15 acres which he claims there were about 60 acres not under water at the time of the trial. The ditch and gates were constructed to let water from the Missouri River into the lake, and to retain it, and "to keep the lake filled." How much of the submersion of defendant's land was due to the ditch and gates cannot be ascertained, but it is a fair assumption that to some extent they effected the object sought by the Commission. There is no evidence that plaintiff ever entered upon or took possession of any of the land except as it may have done so by flooding some of it with water by the said ditch and gates.

Plaintiff states seven propositions on which it relies for a reversal. It argued no others. They are:

"1. Brown's Lake is a navigable body of water. 2. Brown's Lake with the soil beneath it passed to the State of Iowa upon its admission to the Union. 3. The legislature of the State * * * is without power to alienate or to make provision for the alienation of Brown's Lake. 4. Title to Brown's Lake could not be acquired by adverse possession. 5. Brown's Lake was not taxable and no title could be gained to any part thereof by virtue of a tax deed. 6. The right to the waters and soil of Brown's Lake having passed to the State of Iowa on its admission to the Union a subsequent patent thereto by the United States Government was ineffective to convey title therein. 7. The legislature has not intended to vest jurisdiction in the courts to cut off the title of the State to public bodies of water including Brown's Lake."

 I. Conceding that some of these propositions may be abstractly correct, they have little, if any, application or pertinence under the record in this case, and taken singly or in combination they do not entitle plaintiff to a reversal of the District Court's decree. This is true because they disregard or seek to evade the effect of conceded and controlling facts. The most important and the determinative fact is the government resurvey of the large body of land which was encircled by the surrounding water of the bayou or lake, and was not surveyed in the original government survey of 1852. The resurvey was made under the authority and by the direction of the Department of the Interior and its subsidiary departments and representatives. The facsimile of the plat of the survey included in this opinion has thereon this title and certificate:

"PLAT OF SURVEY OF HOOVER'S ISLAND.
(Omitted From Original Survey in 1852).
In Sections 28, 29, 32, 33, Twp. 87 N. R. 47 W. 5th P.M.
Iowa.
DEPARTMENT OF THE INTERIOR.
General Land Office
Washington D. C. January 30, 1900

The above map of Hoover's Island, in Secs. 28, 29, 32, 33 * * * is a correct plat of the survey thereof executed by Wm. P. Hall, U. S. Dep. Surveyor, under his instructions, dated Jan. 9, 1896, and examined and corrected by A. W. Barber, detailed clerk, under special instructions dated October 19, 1899, and is strictly conformable to the field notes thereof, which have been examined and approved, and is constructed under the provisions under Section 2219 U. S. Revised Statutes.

Einger Hermann, Commissioner and Ex Officio Surveyor General for Iowa."

There can be no question of the power of the Department of the Interior to make this survey. "Congress is invested by the Federal Constitution with the power of disposing of, and making needful rules and regulations respecting, the public domain. Its power in this respect is without limitation * * *." 42 Am. Jur., Public Lands, section 10, page 792. "Provision has also been made for resurveys or retracements to mark the boundaries of lands undisposed of, and for resurveys or retracement of township lines." Id. section 40, page 818. "Federal statutes provide for a United States Supervisor of Surveys and deputy surveyors, who carry out their prescribed functions in conjunction with, or under the regulations or instructions of, the Secretary of the Interior and the General Land Office; and a survey made by the proper officers of the United States, and confirmed by the Land Department, is not open to challenge by any collateral attack in the courts if it was within the jurisdiction of the Land Department, and it is presumed to be correct." Id. section 40, page 819. "Under certain Federal statutes the Secretary of the Interior * * * has power to set aside a survey and order another to be made. And the Land Department has the right to resurvey its own lands at any time to ascertain the boundaries thereof, so long as it does not injure the rights of private owners outside the survey * * *." Id. section 41, page 820. "* * * upon the discovery of the mistake it is within the power of the Land Department * * * to deal with the area which was excluded from the survey, to cause it to be surveyed, and lawfully to dispose of it." Id. section 43, page 822. "This depart-

ment [Land Department] is a special tribunal and is vested by statute with substantially exclusive jurisdiction to determine, in the first instance, all questions of fact respecting the disposition, acquisition, and control of the public lands, so long as the legal title thereto remains in the United States." Id. section 57, page 835. "* * * and its decisions once reached on matters within the scope of its authority are unassailable except by direct attack." Id. section 57, page 836. "In the absence of fraud, the decisions of the officers of the Land Department * * * as to matters within their jurisdiction are final and conclusive, except as they may be reversed on appeal in that department. And this is the rule where, as is generally the case, the question is one of fact, as, for example, the geological nature of specified lands, or their topographical characteristics * * *." Id. section 59, pages 837, 838. "The Secretary of the Interior is the chief officer in control of public lands. The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain is wasted or disposed of to a party not entitled to it. He represents the government, which is a party in interest in every case involving the surveying and disposal of the public lands, and he may exercise such supervision by direct orders or by review on appeal from the decisions of local land officers." Id. section 63, page 841. Many decisions of the courts of the United States and of many of the states are cited in the footnotes in support of the statements quoted above.

These rules and principles have been accepted and followed by this court. In Rood v. Wallace, 109 Iowa 5, 9–12, 79 N.W. 449, appeal dismissed in State of Iowa v. Rood, 187 U. S. 87, 23 S. Ct. 49, 47 L. Ed. 86, the controversy was over the dry bed of a meandered nonnavigable lake. Plaintiffs had drained the bed and claimed title through conveyances from Humboldt County, which had no title. Plaintiffs induced the Governor to request the United States Land Commissioner to survey the land and issue patent to the state. This was done, and patent issued to the state was then executed to Humboldt County. Defendants claimed the land under certain pre-emption rights. The State of Iowa intervened, and, as it did in the case at bar,

alleged the lake bed belonged to it by virtue of its sovereignty, in trust for the public, and that its title did not depend upon any act of Congress or grant from the United States; and that the land commissioner had no authority to resurvey the land and issue a patent to any lake beds which had already been meandered and were already the property of the state. A decree for plaintiffs was affirmed. The court, after quoting from Knight v. United States Land Assn., 142 U. S. 161, 12 S. Ct. 258, 35 L. Ed. 974, Cragin v. Powell, 128 U. S. 691, 9 S. Ct. 203, 32 L. Ed. 566, and Rogers Locomotive Machine Works v. American Emigrant Co., 164 U. S. 559, 17 S. Ct. 188, 41 L. Ed. 552, about the authority of the Secretary of the Interior to correct surveys, and to resurvey, and the binding force of the findings and the unassailability of such actions by the courts except in a direct proceeding, said (page 11) : "There seems to be no doubt that the secretary of the interior had the right, in so far as the parties to this suit are concerned, to redetermine the question as to whether or not the land in question was a part of the lake bed, or was covered by the so-called 'Swamp-Land Act.' " (Page 12) : "As the land department determined the lands in controversy to be swamp, and issued its patent to the state accordingly, that determination is conclusive, and the patent cannot be collaterally attacked." The contentions of the State in this case and the relief sought are not different than it urged in the Rood case and the holding of the court in the latter case is a complete answer. The facts in the case before us are more favorable to the defendant than were those in the Rood case to the plaintiffs therein. In the latter case the lake bed was made fit for cultivation by drainage, while in the instant case the Land Department found that over 750 acres of land forming the so-called island and adjacent ground were in existence at the time of the original survey, but were not surveyed. There is no evidence in the record to the contrary. The State has no answer other than to say in argument: "The 'dubbing' of the Hall survey as a 'corrected' survey is obviously opinion and conclusion, as there is no evidence that the surveyor Hall had any actual knowledge or information as to the condition that existed some 44 years prior to the survey." The decision of

the Land Department may not be brushed aside so airily. The question was one of fact respecting the nature of the ground and its topography and must be accepted by this court as final and conclusive. The survey of the deputy surveyor was examined and approved by his supervisors in the department.

It is the duty of the Secretary of the Interior to see that "none of the public domain is wasted" by either fraud or gross mistake. The uniform holding of the courts with respect to the scope and finality of his department in these matters is thus expressed by our highest court through Mr. Justice Lamar, in Cragin v. Powell, supra, 128 U. S. 691, 698, 9 S. Ct. 203, 206, 32 L. Ed. 566, 568:

"That the power to make and correct surveys of the public lands belongs to the political department of the government and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding; and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient."

This is not a case where the action of the Land Department injured any littoral owner around the lake or conflicted with any prior disposal of government land. It was simply a conserving of the public domain and the opening of land suitable to settlement and cultivation to those who were already living on the land and waiting for the government survey and sale of the land. The judgment of the court in Bigelow v. Hoover, supra, 85 Iowa 161, 52 N.W. 124, 39 Am. St. Rep. 296, based on the testimony of witnesses, who were familiar with that locality at and before the original survey by the Government, confirms the finding of the Secretary of the Interior and the Commissioner of the General Land Office that the land was "omitted from the original survey in 1852."

Cases involving the government survey of unsurveyed land or corrected surveys because of errors of omission or commission on the part of government surveyors have often been before this court. There are few where the mistake has involved as large

an area as in this case. See Barringer v. Davis, 141 Iowa 419, 120 N.W. 65 ; State v. Jones, 143 Iowa 398, 122 N.W. 241 (survey refused) ; Schlosser v. Hemphill, 118 Iowa 452, 90 N.W. 842; Grant v. Hemphill, 92 Iowa 218, 59 N.W. 263, 60 N.W. 618; Smith v. Miller, 105 Iowa 688, 70 N.W. 123, 75 N.W. 499; Glenn v. Jeffrey, 75 Iowa 20, 21, 39 N.W. 160.

II. After the Hall survey the Government issued a patent to the land involved herein conveying it to James I. Parker, who had apparently "squatted" on the land to await its survey and opening for entry and purchase. The only challenge by plaintiff to this deed is in the "Conclusion" of its brief and argument, where it states that "the area was not subject to resurvey, nor did the United States Government have the power to make a further grant thereof." We have answered this contention in the preceding division. These objections are not available to plaintiff. As the court said, in Meeker v. Kautz, 213 Iowa 370, 371, 239 N.W. 27, 28, after citing pertinent decisions of federal and state courts: "These cases are all to the point that a patent regular on its face cannot be collaterally attacked." In the courts it is presumptive evidence of the true performance of every requisite to its issuance, and that it is valid and passes legal title. 42 Am. Jur., Public Lands, section 31, page 811, citing many decisions. Id. section 60, pages 838, 839.

Anent the argument that the United States had no right to survey the land or to issue patent granting it to Parker, it may be noted that the Congressional Act of March 3, 1845, 5 Stat. at L. 742, section 7, admitting Iowa as a State provided that it "shall never interfere with the primary disposal of the public lands lying within [its borders]," and that the General Assembly, by an act of January 15, 1849, accepted the condition that it would not so interfere, "nor with any regulations Congress may find necessary for securing the title in such soil to the *bona fide* purchasers thereof." Laws of Iowa, 1848–1849, chapter 91, section 2.

III. Divisions I and II hereof dispose of all of plaintiff's propositions for reversal. Plaintiff stresses considerably its proposition that Brown's Lake is now, and was at all times, a navigable body of water. If plaintiff *had* a cause of

action, as alleged, the point contended for would be of no materiality, as it could maintain its action, the lake having been meandered, even though it was not navigable in any sense of the word. In Iowa the legal title to the beds of all navigable lakes to the high-water mark is in the state in trust for the use and benefit of the public. State ex rel. Cosson v. Thomas, 173 Iowa 408, 409, 155 N.W. 859; Peck v. Olsen Construction Co., 216 Iowa 519, 520, 245 N.W. 131, 89 A. L. R. 1147. But we have repeatedly held that the riparian owner, or, more accurately, the littoral owner (Peck v. Olsen Construction Co., supra, 216 Iowa 519, 533), of lands bordering on a meandered nonnavigable lake have title only to the ordinary high-water mark, and not to the bed of such lake covered by water. See Wright v. City of Council Bluffs, 130 Iowa 274, 276, 104 N.W. 492, 114 Am. St. Rep. 412; Noyes v. Collins, 92 Iowa 566–569, 61 N.W. 250, 54 Am. St. Rep. 571, 26 L. R. A. 609; Carr v. Moore, 119 Iowa 152, 156, 93 N.W. 52, 97 Am. St. Rep. 292; Noyes v. Board of Supervisors, 104 Iowa 174–176, 73 N.W. 480; State v. Thompson, 134 Iowa 25, 26, 27, 111 N.W. 328; Rood v. Wallace, supra, 109 Iowa 5, 8; Schlosser v. Hemphill, supra, 118 Iowa 452, 456; State v. Livingston, 164 Iowa 31, 37, 145 N.W. 91. In some of these cases, the court, by dictum or unnecessary statement, notably Carr v. Moore, State v. Thompson, and Rood v. Wallace, has said that the title to the beds of meandered nonnavigable lakes is in the State of Iowa. In State of Iowa v. Jones, 143 Iowa 398–409, 122 N.W. 241, 244, affirmed in Marshall Dental Mfg. Co. v. State of Iowa, 226 U. S. 460, 33 S. Ct. 168, 57 L. Ed. 300, Justice Ladd, in a thoroughly considered opinion, refers to the aforesaid dicta, and concludes that the title to the beds of meandered nonnavigable lakes did not pass to the State of Iowa on its admission into the Union, but has been retained by the United States, and the waters of these lakes and the soil beneath have been withheld from private appropriation for the benefit of all the people, and reserved through the medium of the State as trustee in trust for all the people, and are treated as under the control and sovereignty of the State. In concluding its opinion, the court said (page 409): "It is enough to dispose of the case at bar to decide, as we do,

that the state has such an interest in Goose Lake as will support an action to restrain defendants, who are without title, from draining the waters therefrom, or otherwise exercising proprietary control over the same."

In State v. Livingston, supra, 164 Iowa 31, 36, 37, 145 N.W. 91, 93, the court said:

"In State v. Jones, 143 Iowa 408, this court has recognized the right of the state to maintain action to prevent persons without title from exercising a proprietary interest over a lake or lake bed, the theory of the decision being that the title to the bed of a nonnavigable meandered lake does not pass to the owners of platted lands bordering upon it, but, in the absence of conveyance by patent, remains in the general government, reserved in trust for all the people of the state in which it lies."

The state may take such action as may seem necessary to protect and preserve such a lake, and while it is not necessary to pass upon the question, and we do not, it is a pertinent inquiry whether the state could ever quiet title to such a lake.

The district court found the lake was not navigable. It appears to be a correct conclusion, although there is no direct evidence in the record upon the matter. It is not necessary to decide it. Plaintiff argues that the lake was navigable because it was meandered. This is a matter for consideration but it is not decisive. Carr v. Moore, supra, 119 Iowa 152, 158; Wright v. City of Council Bluffs, supra, 130 Iowa 274, 276, 277; Brown v. Cunningham, 82 Iowa 512, 515, 48 N.W. 1042, 12 L. R. A. 583; State of Oklahoma v. State of Texas, 258 U. S. 574, 42 S. Ct. 406, 66 L. Ed. 771. The language relied on by plaintiff in Park Commissioners v. Taylor, 133 Iowa 453–458, 108 N.W 927, as stated in State v. Livingston, supra, 164 Iowa 31, 38, related not to meandering as indicating navigability in fact but to the establishment of boundaries.

■ IV. There is no merit to plaintiff's proposition that the land in controversy was not taxable. It became subject to taxation as soon as patent was issued by the Government to James I. Parker. It was platted for taxation a few years after the Hall survey. It was assessed for taxation, and taxes were levied thereafter. It was sold for nonpayment of the taxes

for the years 1931, 1932 and 1933, and tax deed was issued. No attack is made upon the tax title other than that the land could not be taxed because it was State property. The title which defendant holds under the tax deed is a new and independent title.

V. Plaintiff's proposition that defendant could not acquire title by adverse possession has no application. Defendant claims no title by adverse possession. Neither do we find any pertinence in proposition 3, or 7.

VI. It is very questionable whether plaintiff claims anything under the decree of January 15, 1934. It alleged the fact of the decree and that by virtue of it title to the land was quieted in it. The petition does not expressly allege that the decree is res judicata or a prior adjudication of the issue in this case. It could have been pleaded as a defense to defendant's suit which terminated in the decree of July 19, 1946, but the State did not appear in that case. Res judicata must be affirmatively and specially pleaded. In re Estate of Heaver, 168 Iowa 563, 568, 150 N.W. 698; Pfeffer v. Corey, 211 Iowa 203, 210, 233 N.W. 126; Cochran v. Independent Sch. Dist., 207 Iowa 1385, 1390, 224 N.W. 809; Johnson v. Farmers Ins. Co., 184 Iowa 630, 642, 643, 168 N.W. 264; Andrew v. Citizens State Bank, 205 Iowa 237, 243, 216 N.W. 12; Boone Biblical College v. Forrest, 223 Iowa 1260, 1264, 275 N.W. 132, 116 A. L. R. 67. Plaintiff has not assigned the judgment as a ground for reversal, and has not argued the proposition. We might overlook these matters since the suit is tried anew in this court and the facts as well as the law are again reviewed and readjudicated, as if this court had original jurisdiction to try it (Kurth v. Continental Life Ins. Co., 211 Iowa 736, 743, 234 N.W. 201; Taylor v. Lindenmann, 211 Iowa 1122, 1127, 235 N.W. 310), but plaintiff did not introduce the files or pleadings in the case or enough of the record to enable us to determine on what issues of fact or law the decree was rendered, or whether it was decisive of any matters involved or decided in the case on appeal. Merely introducing the decree is ordinarily not sufficient. Campbell v. Ayres, 6 (Clarke) Iowa 339, 343. It was not sufficient in this case. We therefore are unable to pass upon the issue of prior

adjudication. This question was recently passed on in Perry v. Reeder, 235 Iowa 532–538, 17 N.W.2d 98.

VII. The defendant is in possession of the land. It is elementary that one seeking to dispossess an occupant of land or to quiet title in himself must recover on the strength of his own title and not on the weakness of that of his adversary. Rood v. Wallace, supra, 109 Iowa 5, 12; Ogden v. Buckley, 116 Iowa 352, 354, 89 N.W. 1115; Todd v. Murdock, 230 Iowa 1121, 1124, 300 N.W. 284. Plaintiff failed to establish its title to the land. The district court did not err in dismissing its petition.

VIII. The issues in defendant's cross-petition had been adjudicated in the decree of July 19, 1946, and those issues and that decree were re-established and confirmed in this case.

The decree of the district court in dismissing the petition of plaintiff, and in rendering and entering decree on the cross-petition of defendant, Harvey E. Nichols, is—Affirmed.

All JUSTICES concur.