LUCIEN V. PINNEY ET UX. *vs.* THE BOROUGH OF WIN-
STED ET AL.

First Judicial District, Hartford, March Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

It is undoubtedly true as a general rule that where land conveyed is
described by courses and distances, and also by fixed, known and
visible monuments, and there is a conflict between them, the latter
description will control. This rule rests, however, upon the prin-
ciple that the less certainty of description must yield to the greater,
and therefore does not apply where the so-called monument is
merely adjoining land, between which and the *locus in quo* there
is no visible line of separation or demarcation.

Whether this general rule as to the controlling effect of descriptions
by metes and bounds is applicable to descriptions in proceedings
for the taking of land *in invitum, quære.*

The defendant borough had condemned land of the plaintiffs lying
on the north side of a highway, for the purposes of widening the
highway and sidewalk in front of their premises, and in the present
case the practical issue, which arose on demurrer to the com-
plaint, was whether all the plaintiffs' land to their south line had
been thereby appropriated, or whether a strip of about eleven
feet in width had been left untouched by the condemnation pro-
ceedings; and this, in turn, depended upon whether the descrip-
tion by courses and distances should prevail, as contended by the
plaintiffs, or a reference in the description which made the south
line of the land condemned the south line of the plaintiffs' land,
as insisted by the defendants. This line was apparently an imagi-
nary one merely, and its location in dispute. *Held* that under
these circumstances the precise description by courses, distances
and number of square feet, according as it did with the notice as
to what amount of land the borough proposed to take, was the
more certain and reliable, and must therefore prevail.

Neither the municipal authorities nor appraisers, in condemnation
proceedings, have any power to decide disputed questions of title.
The only effect of such proceedings is to conclude the parties as
to the amount of damages and benefits arising from the taking
of the particular piece of land described, and to vest the title to
that land in the municipality upon the payment to the land-
owner of the sum awarded to him as damages.

The report of the municipal authorities and that of the appraisers
stated that the strip of land condemned was taken for the purpose
of widening the highway and sidewalk. *Held* that even if this was

Pinney v. Winsted.

to be interpreted as a statement that the plaintiffs owned no land between the north line of the highway and the strip condemned, it did not conclude the plaintiffs, nor estop them from asserting the contrary in this action. Nor were they estopped by their acceptance of the sum awarded them as damages for the strip which was actually condemned.

The modification of a temporary injunction without prejudice to the plaintiff cannot affect his right to relief.

The defendant borough had control of the construction and widening of sidewalks and the establishment of curb lines, and the defendant town of the construction and repair of the remainder of the highway. Held that the town was properly summoned in as a codefendant, and that having raised upon its demurrer practically the same issue as that made by the borough, the plaintiffs were not required to further amend their complaint in order to obtain a judgment upon that question which would be binding upon the town.

Argued March 5th—decided April 10th, 1907.

SUIT to restrain the defendants from taking a strip of the plaintiffs' land for sidewalk purposes, brought to and tried by the Superior Court in Litchfield County, *Gager, J.*, upon demurrers to the complaint; the court sustained the demurrers and rendered judgment for the defendants, from which the plaintiffs appealed. *Error and cause remanded.*

*Wellington B. Smith* and *Frank B. Munn*, for the appellants (plaintiffs).

*William H. Blodgett*, for the appellee (defendant Borough of Winsted).

*Richard T. Higgins*, for the appellee (defendant Town of Winchester).

HALL, J. The complaint contains in substance these allegations: The plaintiff Augusta C. Pinney, wife of the plaintiff Lucien V. Pinney, has for many years been the owner of a tract of land in the borough of Winsted and town of Winchester, bounded northerly on land of Lucien V. Pinney, easterly on land of F. B. Catlin, southerly on Main Street, and westerly on Union Street. On the 26th

of July, 1902, the warden and burgesses of said borough gave due notice to the plaintiffs to show cause at a fixed time and place why Main Street should not be widened, not exceeding six feet, for the purpose of widening the sidewalk on the northerly side thereof, not exceeding six feet, in front of the plaintiffs' premises, and to show cause why not exceeding six feet of the plaintiffs' land fronting the northerly side of Main Street should not be appropriated for that purpose. The warden and burgesses met on the day fixed, and made report that they "had widened said highway and said sidewalk and laid out the same for said widening by taking the strip of land on 'Main Street included between the southerly side of said Augusta C. Pinney's lot and the extension westerly to Union Street, in a straight line of the present northerly line of the sidewalk on the northerly line of said Main Street in front of F. B. Catlin's lot, said F. B. Catlin's lot being on the easterly side of the said Pinney's lot.'" Said strip is described in said report as follows: "Beginning in the line between the lots of F. B. Catlin and Augusta and Lucien V. Pinney, at a point about $50\frac{68}{100}$ feet distant westerly from the southwest corner of F. B. Catlin's block, $27\frac{2}{10}$ feet distant from the southwest corner of F. B. Catlin's house, and $24\frac{25}{100}$ feet from the southeast corner of said Pinney's house on the northerly *side of said Main street; thence S. 6° 57' W. $5\frac{2}{10}$ feet in said* (The words in italics, which appear in the report of the committee to the Superior Court, were apparently omitted by mistake in the description in this report) line between Catlin and Pinney to said Pinney's southerly line; thence N. 86° W. in said Pinney's southerly line $52\frac{2}{10}$ feet to easterly line of Union Street; thence in said easterly line of Union Street N. 16° 14' E. $4\frac{55}{100}$ feet to a point distant $28\frac{55}{100}$ feet from the southwest corner of said Pinney's house and $37\frac{3}{10}$ feet from the southeast corner of J. H. Alvord's block; thence S. 86° 51' E. $51\frac{45}{100}$ feet to place of beginning; containing 250 square feet"; and that they were unable to agree as to the damages sus-

tained by the plaintiffs by reason of such taking. Upon the application of the warden and burgesses a committee was afterward duly appointed by a judge of the Superior Court " to estimate and assess the benefits and damages accruing to the plaintiffs by reason of taking of said piece of land," who reported in writing to the Superior Court that having fully heard the parties and viewed the premises, they estimated and assessed to Augusta C. Pinney the damages " caused by the widening and extending of said highway, sidewalk, and street, and the taking of said land as aforesaid, at the sum of " $350, and that there were no benefits. (Said report contained the same description of the land for the taking of which such damages were assessed, so far as it is material to the questions involved in this case, as is given above in the report of the warden and burgesses). Said report was duly accepted by the Superior Court, and said sum of $350 was paid to the plaintiff Augusta C. Pinney. The strip of land thus condemned runs through the above described premises of the plaintiffs, and they are the owners of a strip of land on the southerly side of said condemned strip, and between it and the highway, about eleven feet in width, and extending the whole length of the southerly line of the plaintiffs' premises. After the acceptance of said report and the payment of the damages so assessed, the warden and burgesses notified the plaintiffs that the width, course, grade, and curb line of the sidewalk in front of their premises had been established; that the sidewalk was to be $8\frac{1}{2}$ feet wide, the northerly or inside line of the same being the northerly line of the condemned strip above described, and directed the plaintiffs to lay a walk upon said sidewalk and to set a curb along the southerly line thereof, so established in front of their premises, from their easterly line to Union Street, for the purpose of allowing the town of Winchester to extend its highway across the plaintiffs' premises outside of said curb line, and notified the plaintiffs that unless they complied with said order on or before a day fixed the borough authorities would lay such sidewalk and

set said curb; and that if said work should be done by the
borough the expense thereby incurred would become a
lien upon the plaintiffs' property. If the sidewalk and
curb should be constructed and set as above described,
the sidewalk would include not only the strip of land con-
demned as above stated, but also a strip of land belonging
to the plaintiffs, extending along the south side of the con-
demned strip, being about $3\frac{30}{100}$ feet in width at its east
end and $4\frac{5}{100}$ feet in width at its west end; and also a
strip of land belonging to the plaintiffs, extending along
the south side of said curb line, about $7\frac{70}{100}$ feet at its east
end and $6\frac{95}{100}$ feet at its west end, would be thrown into
the traveled highway, and that the plaintiffs would be
thus deprived of said two strips of land, although they
had not been condemned, and although the plaintiffs have
not been compensated therefor, and that the plaintiffs
were willing to lay a sidewalk upon said condemned strip.

The following diagram will illustrate the plaintiffs'
claims as they appear to be stated in the complaint.

The trial court having found that the town of Winches-
ter ought to be made a party to the case, upon the motion of

the borough ordered said town to be summoned in as a codefendant, and said town appeared and pleaded as hereinafter stated.

The temporary injunction granted at the commencement of the action was afterward, upon motion of the defendant borough, modified by the judge who had granted it so as to permit the laying of the sidewalk and the setting of the curb by the borough in the manner ordered, but with the provision that the rights of the parties should in no way be prejudiced by such modification.

To this complaint, asking for an injunction restraining the defendant borough from laying the walk and curb as ordered, and for damages, each of the defendants demurred.

Among the grounds of demurrer filed by the borough are these: (1) That it appears by the condemnation and appraisal proceedings that the southerly boundary of the strip condemned, and for the taking of which the plaintiffs had been paid damages, was the southern boundary line of the plaintiffs' land, and that the plaintiffs could therefore own no land south of the condemned strip. (2) That by the condemnation and appraisal proceedings it was adjudicated that the plaintiffs were not the owners, and were not entitled to damages for the taking, of the land claimed by the plaintiff south of the condemned strip, or of any land between Main Street and the southerly line of the condemned strip. (3) That by said condemnation and appraisal proceedings, and the plaintiffs' acceptance of the sum awarded as damages, the plaintiffs are estopped from claiming ownership of land between the condemned strip and Main Street. (4) That by reason of the modification of the temporary injunction no judgment can now be rendered against the borough.

In addition to the grounds stated in the demurrer of the borough, the town demurred upon the grounds that it appeared that it had no interest in the subject-matter of the action, and that it was not properly made a codefendant; and that no judgment could be rendered against it, since

none was asked for in the prayer for relief, and since there was no allegation in the complaint that the town had done, or intended to do, any of the acts complained of, or any of the acts the doing of which was sought to be enjoined.

The trial court sustained both demurrers upon the ground, as appears by the judge's memorandum, that under the rule that courses and distances must yield to fixed monuments, the southern line of the plaintiffs' land was the south boundary of the condemned strip, and that the plaintiffs could therefore own no land between Main Street and the strip condemned.

The principle upon which the rule invoked by the trial court rests is, that the less certainty of description must yield to the greater certainty unless the apparently conflicting descriptions can be reconciled.

In the dissenting opinion in *Belden* v. *Seymour*, 8 Conn. 19, 26, JUDGE PETERS states that when a boundary is *an imaginary line and not a fixed, visible monument, it will not control courses and distances.* In *Higley* v. *Bidwell*, 9 Conn. 447, 452, the cases cited with approval hold that when boundaries are "*known and visible monuments*," "*fixed, known and unquestionable monuments*," "*known and fixed monuments*," they control courses and distances. In *Benedict* v. *Gaylord*, 11 Conn. 332, 336, the charge of the trial court, that the courses and distances and fixed and known monuments, as contained and described in the deeds, ought to control the more general description of the land, viz : that which describes the land as bounding upon the adjoining proprietors, was held to be correct; the court saying that " the limits of another's land *referred to generally, without particularity of description, or known and certain boundaries, are descriptions of great uncertainty,* and can only be rendered certain by investigation and survey." In *Nichols* v. *Turney*, 15 Conn. 101, 108, the court says that although it is a well-settled rule that as known and fixed monuments will control courses and distances, and so the certainty of metes and bounds will include the land within them though the quantity vary from that ex-

pressed in the deed, *it might be otherwise where the whole deed showed that it was clearly the intent to give only a definite quantity.* In *Roberti* v. *Atwater*, 43 Conn. 540, 546, JUDGE LOOMIS, in giving the opinion of the court, says: " *The rule which gives to monuments and boundaries a controlling effect is not inflexible ;* boundaries may be inadvertently inserted or omitted; they may contravene all the other terms of description, so that to adhere to them might defeat the evident intention of the parties, in which case the extent of the grant would have to be determined by other portions of the description." And in speaking of the case then before the court, says: " *This is not a case where the limits of another's land are referred to generally, and there are no visible indications of the location of such limits ; but the abutting land is* found by the jury to have consisted of *definite inclosures fenced in on all sides, the existence and location of which were well known. We think therefore in this case that such boundaries are more certain and less liable to mistake than the measurements.*"

In the case at bar it appears that in the notice to the plaintiffs of the hearing relative to the widening of Main Street, which was the first step in the taking of the plaintiffs' land, they were informed that it was proposed to appropriate for the widening of Main Street not more than six feet of their land fronting on the northerly side of Main Street; that in the description of the strip taken in the reports of the condemnation and appraisal proceedings, the location of the east and west terminal points of the north boundary line of said strip are indisputably established by stated directions and distances from fixed monuments, and the lengths and courses of the four boundaries of the strip are definitely stated in feet and fractions of a foot, and by points of compass, and that it is stated that the width of said strip on the east is $5\frac{3}{10}$ feet, and on the west $4\frac{55}{100}$ feet, and that the area of the entire strip is 250 feet. It does not appear that there were any visible indications of the location of the plaintiffs' "southerly line," which was also named in the reports as the south boundary

of the condemned strip, or that the parties were in accord
as to the location of that line.    On the contrary, it rather
appears that the borough authorities and the plaintiffs were
in dispute as to the location of the plaintiffs' southern
boundary line.    Without deciding whether the rule invoked,
as to the controlling effect of descriptions by metes and
bounds in deeds, is applicable to descriptions in proceedings
for the taking of land *in invitum*, we are satisfied that to
so construe the language of the descriptions in these re-
ports as to make the south boundary of the condemned
strip the line which the plaintiffs allege in their complaint
is the southern boundary of their land, would be to make
that which is least certain control that which is most cer-
tain, and would defeat the evident intention of all the
parties to the condemnation proceedings ; and that therefore
the description by measurements of the southern boundary
of the condemned strip must control that describing it as
the southerly line of the plaintiffs' land.

The proceedings of the warden and burgesses, and of the
committee of appraisers, was not an adjudication that the
plaintiffs owned no land between the strip condemned and
Main Street.    The entire effect of their proceedings, and
of the acceptance by the court of the report of the apprais-
ers—no objection having been made and no appeal having
been taken—was to conclude the parties as to the amount
of damages and benefits sustained by and accruing to the
plaintiffs from the taking of the particular strip of land
described in the reports, and to vest the title to that strip
of land in the borough upon its payment to the plaintiffs
of the sum awarded as damages.    The record of the doings
of the warden and burgesses, and of the appraisers, shows
that no damages were assessed for the taking of any other
property than that particularly described.    The appraisers
could only assess damages for the property actually taken,
and neither the warden and burgesses, nor the appraisers,
·possessed the power in the condemnation proceedings to
decide that the plaintiffs did not own, or were not entitled
to damages for the taking of, property which was not con-

Pinney v. Winsted.

demned. They were not authorized to decide disputed questions of title. *Spring Valley Water Works* v. *San Francisco*, 22 Cal. 434; *Wilcox* v. *Oakland*, 49 id. 29; *Port Huron & S. W. Ry. Co.* v. *Voorheis*, 50 Mich. 506, 15 N. W. 882; *O'Hare* v. *Chicago, M. & N. R. Co.*, 139 Ill. 151, 28 N. E. 923; *Crangle* v. *Harrisburg*, 1 Pa. St. 132; *Charleston & S. Bridge Co.* v. *Comstock*, 36 W. Va. 263, 15 S. E. 69. Evidently the borough authorities acted upon the assumption that the plaintiffs owned no property between the strip condemned and Main Street. It is not inconsistent with the averments of the complaint that the plaintiffs made a different claim. Certainly it does not appear that the plaintiffs in any way induced the borough authorities to believe that the plaintiffs did not claim to own land south of the condemned strip. The borough authorities, therefore, acted at their peril upon the assumption that the south line of the condemned strip was the southern boundary of the plaintiffs' land; and if the statement in the condemnation proceedings, that the strip condemned was taken for the purpose of widening the highway and sidewalk, is to be interpreted as a statement that the plaintiffs own no land between the north line of Main Street and the strip condemned, it does not conclude or estop the plaintiffs from asserting the contrary in this action.

The fact that the plaintiffs have accepted and still retain the $350 assessed as damages does not estop them from making the claims set forth in the complaint. This sum was voluntarily and intentionally paid by the borough as compensation for the taking of the strip actually condemned only, and was so received by the plaintiffs. The borough still claims title to the strip condemned, and the plaintiffs neither question the validity of the condemnation nor the title of the borough to the strip condemned. That they have received payment for the land condemned does not prevent them from resisting the taking without compensation of their land which has not been condemned.

The plaintiffs' right to relief by this action is not affected by the modification of the temporary injunction.

Upon the defendants' motion the modification was granted upon condition that the plaintiffs' rights in this action should not be prejudiced thereby.

The defendant town of Winchester was properly summoned in as a codefendant. By its charter the borough of Winsted is given the control of the construction and widening of sidewalks and the establishing of curb lines and the extension of highways for that purpose; while the control of the construction and repair of the remainder of the highway remains in the town of Winchester. 12 Special Laws, p. 763. The town, therefore, had an interest in the question of whether the strip of land claimed by the plaintiffs south of the curb line was or was not a part of the highway. The town was rightly summoned in in order to render the final judgment, as to the location of the plaintiffs' south boundary line, conclusive upon all the parties interested. Having appeared and by its demurrer raised practically the same issue upon that question as that raised by the borough, the plaintiffs were not required to further amend their complaint in order to obtain a judgment upon that question which would be binding upon the town.

Under the allegations of the complaint the plaintiffs may prove facts which will entitle them to equitable relief. The demurrers were therefore wrongly sustained.

There is error, and the case is remanded with directions to overrule the demurrers and proceed according to law.

In this opinion the other judges concurred