JACOB WALZ *vs.* CHARLES J. BENNETT, STATE HIGHWAY COMMISSIONER.

Third Judicial District, Bridgeport, October Term, 1920.
WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, JS.

It is customary and proper for a committee to report all the facts bearing upon alternative claims made before it, and to make its award in the alternative as the court may adjudge the law upon the facts so reported.

In the present case land of the plaintiff adjacent to the Housatonic River was taken for a highway, and the committee reported that the plaintiff owned full riparian rights in the river, and was entitled to damages of $2,250; but that if such rights did not belong to him, then his damages would be $1,750. The subordinate facts essential to the determination of this question of riparian rights were, how-

ever, not set forth in the report, but it was stipulated by counsel that these facts consisted of three warranty deeds and two maps, which were filed with the court and by its indulgence were treated as though incorporated in the report. *Held* that while the proper procedure would have been to recommit the report to the committee for a finding of these subordinate facts, the irregular course followed made the stipulation in effect a part of the committee's report, and justified this court in so treating it in the interest of a speedy termination of the litigation.

Questions of fact tried by a committee cannot be retried by the court upon a remonstrance, and therefore a finding of facts by the court is out of place and must be ignored by this court upon appeal.

The plaintiff's deed described his land as bounded "northerly on Housatonic River by a line along high-water mark seventy-eight feet." *Held* that in the absence of any reference to riparian rights, the essential boundary in this description was the river, the remainder of the description merely informing the grantee of the extent of the land when measured along high-water mark.

The owner of land bounded upon a navigable river has full riparian rights below the high-water line, unless such rights have been legally separated from the upland by some former owner by alienation by deed, or by exception or reservation in a conveyance of the upland, or otherwise.

A conveyance of upland by its owner presumptively carries with the land the riparian rights attached thereto.

The evidence in the present case reviewed, and the conclusion of the trial court—that the plaintiff owned the full riparian rights in the Housatonic River attached to his upland—sustained.

Error cannot be predicated with respect to the contents of a finding if the finding itself has no proper place in the record.

Argued October 29th—decided December 22d, 1920.

PETITION by the plaintiff for a reassessment of the damages sustained by him from the taking of a portion of his land for highway purposes, brought to the Superior Court in New Haven County, which appointed a committee, accepted its report, and, pursuant thereto, rendered judgment (*Warner, J.*) in favor of the plaintiff, increasing his damages from $1,500 to $2,250, and from this judgment the defendant appealed. *No error.*

*Omar W. Platt,* for the appellant (defendant).

*Thomas M. Cullinan* and *Samuel B. Plotkin,* for the appellee (plaintiff).

CURTIS, J.   When the report of the committee came before the Superior Court upon remonstrance, it appeared from the report that the committee had made a reassessment in favor of the plaintiff in the alternative, for the sum of $2,250 or $1,750, dependent upon whether or not he owned the full riparian rights in the Housatonic River attached to his upland, a portion of which upland was taken for highway purposes.

In his remonstrance the highway commissioner stated, as one ground for rejecting the report: "3. Because the said committee have made an alternative finding in their report in paragraph six thereof, in which paragraph they find that if said riparian rights did not belong to the appellant then the special damages above the special benefits resulting to said appellant by reason of the proceedings described in the complaint would be $1,750, thereby leaving it for the Superior Court to determine whether or not such rights in fact exist."   To this ground of remonstrance Walz demurred, on the ground that "it was proper and legal for the committee to find the facts and award damages in the alternative, depending upon the construction by the court of a question of law.

This demurrer the court properly sustained.   It is customary and proper for a committee to report all the facts bearing upon certain alternative claims made before them, and make their finding in the alternative, dependent, as to the judgment, upon the ruling of the court as to which of the alternative findings the facts reported legally sustain.

It appears, however, from the report, that the subordinate facts essential to the determination of the question whether or not Walz owned such riparian

rights, were not contained in the report. The report should have then been recommitted to the committee for a report upon the subordinate facts underlying their finding that Walz owned the full riparian rights in the Housatonic River. Instead of taking that course, counsel entered into a stipulation to the effect that three warranty deeds and two maps filed in court by the parties were the subordinate facts upon which the committee based its finding that Walz owned the full riparian rights in the Housatonic River attached to his upland. This stipulation became in this irregular way, by the indulgence of the court, in substance a part of the report of the committee. The court therefore had before it, by the stipulation of the parties, the question whether Walz, under the report of the committee supplemented in this irregular way, owned the full riparian rights in the Housatonic River attached to the upland which he owned and possessed. In this court the parties, by mutual consent, presented the documents referred to in their stipulation, namely, the originals of the three warranty deeds and two maps, as subordinate facts made a part of the committee's report by their stipulation and the indulgence of the Superior Court. This also was an irregular proceeding, which we shall overlook in this instance in order that this litigation may be speedily ended.

As the questions of fact tried by the committee could not be retried by the Superior Court, the finding of facts made by that court was out of place and must be ignored in this court. As stated above, the only question for the Superior Court to determine was whether the committee's report, as supplemented by the documents filed in court as a part thereof by stipulation as relevant subordinate facts in relation to riparian rights, sustained the report of the committee, that Walz owned the full riparian rights in the Hou-

satonic River, attached to the upland of which he was
the undisputed owner. The Superior Court ruled that
the committee's report as to this fact was sustained
by such subordinate facts.

This ruling was correct. It appears from the com-
mittee's report thus supplemented, that in May, 1912,
there was conveyed by warranty deed to one Jessie L.
Lewis nine acres of land, within which was included
the Walz upland, in which deed her westerly boundary
was described as "on the Housatonic River." That
this deed conveyed to her the upland with full riparian
rights in the Housatonic River, was not questioned.
This property was divided into building lots in 1913
and mapped by Jessie L. Lewis, the lots extending
from the old highway, which crosses Washington
Bridge, to the Housatonic River. The width and
depth of the lots were given on the map, including the
width at high-water line. In 1917 Jessie L. Lewis
conveyed to one Charles Ornstein, by warranty deed,
lot No. 11 on said map and one half of lot No. 10 on
said map, describing the land conveyed as follows:
"Those certain parcels of land situated in the town
of Milford and being known and designated as Lot
No. Eleven (11) and the westerly one half (1/2) of
Lot No. Ten (10) on map of Washington Crest Milford
Conn. the property of J. L. Lewis Revised Layout
of 1913 and filed for record in the town clerk's office
in said Milford Feb. 6th, 1913. Said piece or parcel of
land according to said map is bounded and described
as follows, to wit: Northerly: On Housatonic River,
by a line along high-water mark seventy eight (78)
feet. Easterly: by land of Jessie L. Lewis two hundred
eight (208) feet more or less. Southerly: on Bridge-
port and Milford Turnpike seventy-five (75) feet;
and Westerly: on land formerly of Valentine Britling
one hundred eighty (180) feet." In 1919 Charles

Ornstein conveyed this parcel of land, conveyed to him by Jessie L. Lewis in 1917, to Jacob Walz, by a warranty deed, giving the northerly boundary as "on the Housatonic River by a line along high-water mark seventy-eight (78) feet."

In the absence of any reference to riparian rights in these deeds, the essential boundary in the description of the northerly boundary as "on Housatonic River by a line along high-water mark seventy-eight (78) feet," is the Housatonic River. The remaining designation, "by a line along high-water mark seventy eight (78) feet," is a statement of the extent of the land conveyed in fee when measured along high-water mark, thereby informing the grantee of the exact extent of land which the grantor owned in fee.

In Connecticut the public, whose representative is the State, is the owner of the soil between high and low-water mark upon a navigable river in which the tide ebbs and flows. The owner of the adjoining upland has the exclusive privilege of wharfing and erecting stores and piers over and upon such soil, and of using it for any purpose which does not interfere with navigation, and he may convey this privilege separately from the adjoining uplands. Over such soil he has the exclusive right of access to the water, the right to accretion, and generally to reclamation. *Farist Steel Co.* v. *Bridgeport,* 60 Conn. 278, 283, 22 Atl. 561; *Prior* v. *Swartz,* 62 Conn. 132, 25 Atl. 398; *Brower* v. *Wakeman,* 88 Conn. 8, 89 Atl. 913; *Barri* v. *Schwarz Bros. Co.,* 93 Conn. 501, 107 Atl. 3. The owner of the fee to high-water mark has such riparian rights below the high-water line, unless such rights have been legally separated from the upland either by some owner of it by alienation by deed or by exception or reservation in a conveyance of the upland, or otherwise. A conveyance by an owner of the whole or portions of a tract of upland bordering upon

such a river, would presumptively carry with the piece conveyed the riparian rights attached thereto. *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 507, 107 Atl. 3. "Such presumption, however, is a rebuttable one, and if the grantor's intent to confine his grant to the upland, or to reserve some portion of the riparian rights attached thereto, is apparent from his deed when read in the light of the attending and surrounding circumstances, effect will, as in other cases, be given to that intent, and the operation of the deed limited accordingly." *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 507, 107 Atl. 3.

Neither from the deed of Lewis to Ornstein nor from the deed of Ornstein to Walz, when read in the light of the attending and surrounding circumstances as disclosed in the supplemented report of the committee, does it appear that either of these grantors intended to confine his grant to the upland or to reserve the riparian rights attached thereto. On the contrary, the use of the Housatonic River as the essential northerly boundary, and the fact that the high-water line mentioned in connection with the river in giving the northerly boundary is in law in this State the limit of the ownership in fee, makes it apparent that the presumption stated above coincides with the intent of such grantors. We hold, therefore, that the court correctly decided that Walz owned the full riparian rights in the Housatonic River attached to his upland.

Among the appellant's reasons of appeal there are four assignments of error because the court refused to find certain facts, and three assignments of error because the court erred in finding certain facts. We have already stated that a finding of facts had no place in these proceedings, and consequently no errors can be predicated in relation to such finding.

The fundamental error underlying the procedure followed in this case, was a conception on the part of

counsel that they were retrying before the trial court the matter that was referred to the committee. "The questions of fact tried by the committee cannot be retried by the court upon a remonstrance." *Fox* v. *South Norwalk*, 85 Conn. 237, 241, 82 Atl. 642. The court could decide upon certain subordinate facts reported by the committee, which of two alternative findings of ultimate facts could be legally sustained. The court could not, upon a remonstrance, receive additional evidence as to any question tried by the committee and retry it. We have recently dealt so fully with the proper procedure in the matter of a remonstrance to a committee's report, that it is unnecessary to pursue the matter further at this time. See *Fox* v. *South Norwalk*, 85 Conn. 237, 82 Atl. 642.

There is no error.

In this opinion the other judges concurred.