[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-captioned civil matters were tried to the court on October 27, 1998 through October 30, 1998. In April 1999, the parties filed their trial briefs which included stipulations of fact, proposed findings of fact and memoranda of law. The central issue which is dispositive of the numerous causes of action presented in both cases is a judicial determination of which party owns a fee simple interest in a road depicted on subdivision Map No. 1204 filed on the land records of the Town of Salisbury, Connecticut on November 20, 1969.[1] (Defendant's Exhibit 1). Both parties seek a resolution of the dispute pursuant to General Statutes § 47-31.
 FACTS
A) Joint Stipulation of Facts
The parties have stipulated to the following facts which are accepted by the court.
1. Each of the corporate parties to these actions claims ownership of the underlying fee to a road. (Complaint, CT Page 7190 CV94-0065186S Complaint, CV95-0068326S).
2. These quiet title actions involve a dispute over the ownership of the underlying fee interest in a certain road shown on a subdivision map filed in the Salisbury Town Clerk's Office as Map No. 1204 and consisting of three segments-a 50 foot wide Proposed Town Road; a 60 foot wide Private Road; and a "turn around" or circle connecting them. (This fee interest in the road is hereinafter referred to simply as the "Road"). (Id.).
3. Bird Peak Corporation (hereinafter "Corporation") claims title to the Road by virtue of a warranty deed dated May 5, 1983 from Weltzien to Thorpe Mountain, Inc. (Complaint, CV95-0068326S). The May 5, 1983 warranty deed is hereinafter referred to as the "1983 deed."[2]
4. Bird Peak Association, Inc. (hereinafter "Association"), claims title to the Road by virtue of a quitclaim deed dated July 23, 1993 from Robert F. Weltzien.[3] (Complaint, CV94-0065 186S). This deed is hereinafter referred to as the "1993 quitclaim."
5. The Corporation is the successor to the title acquired by Thorpe Mountain, Inc. under the 1983 deed. (Stipulation, Trial Tr., 10/27/98, at 3 28).
6. The root of both the Corporation's and the Association's claim of title derives from a large tract of property that Robert F. Weltzien acquired from Shagroy Farm, Incorporated by deed dated August 12, 1961, and recorded in the Salisbury Land Records in Volume 83, Page 557 (Joint Ex. 2A), and by deed dated January 4, 1965, and recorded in the Salisbury Land Records in Volume 89, Pages 273-75. (Joint Ex. 2B).
7. On May 5, 1983, immediately before Weltzien delivered the 1983 deed to Thorpe Mountain, the only holdings remaining from his original acquisitions from Shagroy Farm were (a) the Road and (b) a large tract to the north of the subdivision. (Stipulation, Trial Tr. 10/30/98, at 31).
8. If the Road was conveyed under the 1983 deed, then the Corporation is the owner, and judgment on the quiet title claims should enter in favor of the Corporation. (Stipulation, Trial Tr., 10/27/98, at 3). CT Page 7191
9. If the Road was not conveyed under the 1983 deed, then the Road passed to the Association under the 1993 quitclaim, and judgment on the quiet title claims should enter in favor of the Association. (Id.).
10. The individual members of the Association do not claim ownership of the Road; they do own easements over all or part of the Road pursuant to the deeds through which they acquired title to their respective lots. (Stipulation, Trial Tr., 10/27/98, at 19).
B) Facts Found by the Court
In addition to the stipulated facts, the court finds the following relevant facts:
The road which is at the center of the dispute is approximately 12 feet wide and 3000 feet long. It begins at a public road known as Belgo Road and runs in a northwesterly direction to its point of termination. The road provides access to a rural subdivision of residential homes.
The Association is a Connecticut corporation created in September 1993. The nature of its business activities are set forth in its certificate of incorporation as "to own, maintain and repair Indian Orchard Road and overlook Drive, private roads located northerly on Belgo Road on Bird Peak, so called, in Lakeville, Connecticut and all such activities as law permits." (Plaintiffs Exhibit 1). The corporate board is designated as "self-perpetuating and will consist of one voting member from each household owning improved property located on or detached from Indian Orchard Road or Overlook Drive, private roads north of Belgo Road, Lakeville, Connecticut." (Id.) The Association members are numerous owners of residential dwellings located on properties on either side of the Road. These individuals are: Margaret Mitchell Lot No. 1, Allen Nadler Lot Nos. 2A and 2B, Diane Sharon Lot No. 3, James and Katherine Janowitz Lot No. 4, Leon and M. Moed Lot Nos. 7 and 8, June T. Leaman Lot No. 9, Jeffery Weigngarten Lot No. 15.[4]
The subdivision was approved by the Town of Salisbury in 1969. Weltzien sold the building lots during the years 1969-1979. Each building lot was conveyed with a right of way over the Road but not a fee interest. Approximately one-half of the property owners within the subdivision are members of the Association. CT Page 7192
The Corporation owns lots 12 and 16 within the subdivision. It also owns a large parcel of undeveloped property northwest of the Road. Dario Ceppi is a principal in the Corporation. The Corporation is a successor in title to Thorpe Mountain, Inc. Robert F. Weltzien conveyed his interest in the real property currently owned by the Corporation to Thorpe Mountain, Inc., by warranty deed dated May 5, 1983. (Defendant's Exhibit 27).
Robert F. Weltzien acquired title to the parcels of land from Shagroy Farm, Inc., in August 1961 and January 1965. A summary chronology of conveyances into and out of Weltzien are depicted on Defendant's Exhibits 24, 25. Thorpe Mountain, Inc., had planned to develop the property it acquired from Weltzien. The Corporation obtained this property from the New Milford Savings Bank following its foreclosure of the Thorpe Mountain, Inc., interest in it.
In June 1988, a number of the current members of the Association formed a voluntary association entitled Bird Peak Road Association (hereinafter referred to as "Vol. Assoc."). The bylaws of the Vol. Assoc. were executed by its members on June 27, 1988. (Defendant's Exhibit 13). The document was recorded in the Town of Salisbury land records on June 16, 1993. The members represented in the bylaws the following in relevant parts;
 "WHEREAS, the undersigned are co-owners., of easements in the nature of rights-of-way over and owners of the underlying fee to the aforementioned roads, and
 WHEREAS, the undersigned wish to form an association for ownership and protection of said roads,
 5. No portion of the three roads . . . shall be widened or upgraded to the degree required for acceptance by the Town . . . without the unanimous consent of the membership of this Association." (Id.)
On the dates in which the bylaws were executed and filed on the land records, the Vol. Assoc. was not the fee owner of the road. The interests of the individual lot owner members were limited to rights of way over the road. Further, notwithstanding the representation in paragraph 3 of the bylaws regarding the simultaneous filing of a quit claim deed for the road, it did not take place. CT Page 7193
The Town of Salisbury has not accepted any portion of the road as a public road. Robert H. Weltzien executed a quitclaim deed on July 23, 1993. The deed purports to convey a fee simple interest in the road to the Association. (Plaintiffs Exhibit 2). Weltzien was paid $1,000.00 in consideration for the deed by several individual members of the Association.
The members of the Association pay a pro-rata fee for the maintenance of the Road. The calculation of the amount of the fees are based upon the properties distance from Belgo Road. The Town of Salisbury does not specifically assess property taxes on the Road. Despite their claims to the contrary neither party has proven that they pay the taxes on the road.
In May 1994, Dario Ceppi along with several individuals began to cut trees in proximity to Allan Nadler's property. The Association has not proven that the trees were located on property owned by it. Allan Nadler removed surveyor stakes placed on or adjacent to his property by the Corporation. The Corporation has not proven that the stakes were located on property owned by the Corporation at time of their removal.
 DISCUSSION A
The determination of which party owns the fee interest in the road turns on the interpretation of the May 5, 1983, warranty deed between Robert Weltzien and Thorpe Mountain, Inc. The parties have stipulated that if title passed under the 1983 deed, then the Corporation owns the fee to the road. If title did not pass under the 1983 deed, then the Association owns the fee to the road by virtue of the 1993 quitclaim deed from Robert Weltzien.
"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed., in the language used, however, it is always admissible to consider the situation of the parties and the CT Page 7194 circumstances connected with the transaction, and every part of the writing should be considered with the help of the evidence. . . . Moreover, the words [in the deed] are to be given their ordinary popular meaning, unless their context, or the circumstances, show that a special meaning was intended." (Citations omitted; internal quotation marks omitted.) Cohen v.City of Hartford, 244 Conn. 206, 214-15, 710 A.2d 746 (1998).
There are four paragraphs of the 1983 deed that are relevant to determining whether the deed conveyed title to the road. First, ¶ 2[5] of the deed sets out a metes and bounds description of the southern border of the conveyed property. The description refers to a portion of the private road and states "as hereinafter described and conveyed". Second, ¶ 11 of the deed expressly refers to the road and grants "rights of way in common" over the road. Third, in ¶ 15, the deed states that "[a]lso conveyed hereby is all right, title and interest of the grantor in any covenants or hereditaments and together with any strips, gores or other premises which the grantor may have retained with respect to said lands." Last, in the "meaning and intending" clause, ¶ 19, the deed states that all premises originally conveyed to Weltzien by Shagroy Farms, Inc., and not already conveyed, were meant to be transferred.
Those paragraphs are in apparent conflict in that ¶ 2 does not include the road in the metes and bounds description other than as described above. While ¶ 11 expressly grants only a right of way over the road, and ¶¶ 15, 19 seem to express a general intent to grant title to whatever property Weltzien retained. "The situation presented is one where two descriptions are given which, upon their face at least, appear to be in conflict, or in possible conflict. The rule in such cases is that the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled." Barri v. Schwarz Brothers Co., 93 Conn. 501, 510,107 A. 3 (1919); see also Mount Maumee Partnership v. Peet,40 Conn. App. 752, 755-56, 673 A.2d 752, cert. denied,237 Conn. 924, 677 A.2d 947 (1996) (applying rule of construction to deed with multiple descriptions). In the 1983 deed, the only language which specifically refers to a conveyance of the road is one which grants only a right of way over it and not the fee to it.[6] It is evident that this specific language controls over the general references of the other paragraphs, and therefore, the 1983 deed grants only an easement over the road. CT Page 7195
The Corporation cites to Lake Garda Association v.Battistoni, 160 Conn. 503, 514, 280 A.2d 877 (1971), for the proposition that Weltzien should not be deemed to have retained title to the road in the 1983 deed because the road was no longer of any value to him. The portion of the case on which the Corporation relies dealt, however, with the proposition that a grantor should not be deemed to have retained "a narrow strip of land between that sold and the boundary line of his property." Id., 514. Here, the issue is not whether Weltzien intended to retained a narrow strip created by ambiguous mapping, but what interest he intended to convey in a clearly described and demarcated road.
The Corporation makes several arguments to the effect that the court should infer that Weltzien did intend to transfer ownership of the road, even though such an intention is not expressed clearly in the deed. The conveyance of a right of way over the road is, however, clearly and expressly included in the deed. "Although the surrounding circumstances are admissible in determining the intent of the parties, when interpreting the language of a deed the question is not what the parties may have meant to say, but the meaning of what they actually did say."American Trading Real Estate Properties, Inc. v. Trumbull,215 Conn. 68, 75, 574 A.2d 796 (1990). Therefore, in the present case in contrast to Trumbull where the court determined that the fee interest to a road was conveyed because the parties did not express the interest as an easement, the interest conveyed in the road by the 1983 deed was a right of way because the parties did not express the interest as the fee. See Id., 72-75; see alsoAlemay v. Commissioner of Transportation, 215 Conn. 437, 442,576 A.2d 503 ("An instrument conveying an interest in land conveys only that which is specifically expressed in the document.").
Both the Corporation and the Association contend that the 1983 deed can be interpreted on its face and the court need not look to extrinsic evidence to determine the matter. The court agrees that the application of the rules of interpretation to the deed is sufficient to decide whether the fee to the road was conveyed. Therefore, it is unnecessary to resort to extrinsic evidence.[7] The court agrees with the interpretation advanced by the Association that only rights of way in common were granted by the 1983 deed. As stipulated by the parties, because the road was not conveyed under the 1983 warranty deed, it was conveyed necessarily by the 1993 quitclaim. CT Page 7196
 B
The Corporation has brought a claim for slander of title based on the filing of documents on the land records claiming title to the road by the Association. "Slander of title is a tort whereby the title of land is disparaged by a letter, caveat, mortgage, lien, or some other written instrument. . . . Slander of title also requires allegations of false statements made with malice towards the title of the property." (Internal quotation marks omitted.) Arrowhead by the Lake Assn. v. Arrowhead, Superior Court, judicial district of Waterbury, Docket No. 128458 (January 21, 1999, West, J.); see also Wildwood Associates v.Esposito, 211 Conn. 36, 49-50, 557 A.2d 1241 (1989); HarveyRealty Co. v. Wallinaford, 111 Conn. 352, 361, 150 A. 60 (1930). Because the Corporation does not have title to the road, the Corporation cannot succeed on the claim of slander to title. Although the Vol. Assoc. did not have title to the road at the time the bylaws were filed on the land records, the Corporation simply did not have the title that was allegedly slandered by that document (Defendant's Exhibit 13.). See Roman v. Julian, Superior Court, judicial district of Tolland at Rockyille, Docket No. 063656 (September 21, 1998, Sullivan, J.).
 C
The Association claims damages for the Corporation's cutting of trees. General Statutes § 52-560 provides for treble damages for the destruction of trees by a trespasser. "Since trespass is a possessory action, it is necessary for the plaintiff to prove possession, actual or constructive, to prevail." Koennicke v. Maiorano, 43 Conn. App. 1, 31,682 A.2d 1046 (1996) (finding that plaintiff had proved ownership of land in § 52-560 claim). As the court has found that the Association failed to prove that the trees were located on lands owned by the Association, the § 52-560 claim must fail. Likewise, the Corporation's claim for trespass fails because the Corporation did not prove that the stakes removed by Allen Nadler were located on lands owned by the Corporation.
 CONCLUSION
The warranty deed of May 1983 conveyed to the Corporation a right of way in, but not title to, the road. Title to the road vested therefore in the Association through the quitclaim deed of 1993. The Corporation's claims for slander of title and trespass CT Page 7197 fail because the Corporation does not have title, and the Association's claim for damage to trees fails because it did not prove that the trees were located on the Association's land.
The parties shall prepare a judgment file in accordance with this memorandum of decision and present the judgment file to the court.
BY THE COURT,
Peter Emmett Wiese, Judge