QUINTON TODD et al., Appellants, v. ALBERT MURDOCK, Appellee.

No. 45637.

October 14, 1941.

Prichard & Prichard, for appellants.

Sifford & Wadden, for appellee.

Oliver, J.—Plaintiffs own certain land in Monona County, Iowa, described in part as Lot 3, in Section 15. Lot 3 is bounded on the east by Lot 4, in Section 15, to the east of which are, in respective order, Lots 4, 5, 6 and 7, in Section 14. These lots are each ¼ mile in width—east and west—and vary from about 49 to 57 acres in area, as shown by the original government survey, made in 1853. At the time of said survey all of said lots were bounded on the south by the Missouri River, which flowed southeast as it approached that vicinity and then ran almost due east for several miles along the south side of said lots and adjacent lands east and west of said lots, after which it turned to the south. Since 1853 this east and west stretch of the river has gradually swung to the south and now flows approximately south from a point near the west line of plaintiffs' Lot 3. The high bank of the river as it flowed in 1853 is still visible. This

action of the river has left a considerable body of land, which the parties agree is accretion to the lands above described and other adjoining riparian lands. The recession of the river in this vicinity was by no means regular or uninterrupted. It frequently shifted back and forth, alternately making and cutting away land. Due in part perhaps to recent government work on the river, the greatest recession of the river and resultant formation of land occurred within 3 years prior to the trial of this case in district court. It was during this period that the particular lands in controversy in this suit were formed.

Plaintiffs secured Lot 3, in 1896, by deed, which recited that it included all accretions lying between the east and west lines of said Lot 3 extended south to the bank of the Missouri River. At that time the river was much farther to the north than it is today.

Plaintiffs claim and have always claimed ownership of all the land formed by the river directly south of Lot 3, or, in other words, between the east and west lines of Lot 3, projected south to the river. They fenced the east and west lines of this tract (the river now occupies part or all of the west line), and as the river receded, these fences were from time to time extended further south.

In 1888, in an action to quiet title to accretion to Lots 6 and 7, in Section 14, and certain riparian lands east thereof, a decree had been entered establishing the boundaries of these various accretion tracts. It should be here said that defendant claims to be the owner of the accretions to Lots 6 and 7. The lines separating the various accretion tracts as established by the survey and said decree in said suit ran in a southwesterly direction to the then bank of the river. Neither plaintiffs nor their predecessors in interest were parties to said suit, which involved riparian lands three-fourths of a mile east of said Lot 3. Nor was the distance the river had then receded from the original meander line great enough so that these southwesterly accretion lines intersected the south extension of plaintiffs' lines. However, plaintiffs and several of their neighbors knew of the survey and decree, and that the accretion lines established thereunder ran southwest and plaintiffs, assuming their own accretion lines would likewise run southwest, secured from one Jividen, the

owner of Lot 4, which joins Lot 3 on the east, a deed to all the accretions to Lot 4, lying directly south of Lot 3. Jividen made a similar arrangement with the owner of the two lots immediately east of his land.

Shortly prior to the institution of this suit plaintiffs extended their fence south along the east line of the newly made land claimed by them, almost to the river. Soon thereafter defendant was extending a fence which ran southwesterly, apparently along the extension of the west accretion line of Lot 6, in Section 14, as fixed by the survey and decree of 1888. These fences intersected each other at a point perhaps a mile south of the 1853 high bank of plaintiffs' Lot 3 and about the same distance southwest of the old high bank of Lot 6, in Section 14.

Plaintiff then instituted this suit to quiet title and enjoin the erection of said fence. At the conclusion of plaintiffs' evidence, defendant moved for a dismissal upon the grounds (1) that plaintiffs had failed to show any right, title or interest in the lands in controversy, and (2) that plaintiffs acquiesced in the decree of 1888, and recognized that the division lines between the accretion tracts ran southwest and were thereby estopped from asserting claims antagonistic to said decree. The court sustained the motion and dismissed the action with prejudice. Plaintiffs have appealed.

It is well settled that a plaintiff seeking to quiet title must recover, if at all, upon the strength of his own title. The weakness of the claims of his adversaries cannot aid him. McFerrin v. Wiltse, 210 Iowa 627, 231 N. W. 438. As was said in Kuehl v. Town of Bettendorf, 179 Iowa 1, 7, 161 N. W. 28, 31:

"Plaintiff has the laboring oar, as he commenced the action, and must recover on the strength of his own title."

In this case plaintiff-appellants predicate their right to decree in their favor in part upon the contention that they secured title by adverse possession and through the Jividen deed.

Appellants' claim of adverse possession is not supported by the record. The only evidence of adverse possession for 10 years or more concerns land some distance north of the land here in controversy. The record indicates that the particular land involved in this suit was formed by the action of the river

within three years prior to the trial of this case. Therefore, it was impossible for appellants to have had adverse possession of this land for the length of time necessary for the same to ripen into title.

■ The Jividen deed to appellants is binding upon Jividen and his successors in interest. However, as against others, it gives appellants no rights to the land in controversy other than the rights of Jividen. Unless the land in controversy is accretion to Jividen's Lot 4, that conveyance would add nothing to appellants' right to claim the land against strangers. The same answer is applicable to the contention that some of the riparian owners agreed the accretion lines should run straight south. Assuming such an arrangement was made, it would not cut off the rights of other riparian lands in the same accretion tract to accretions properly attaching to said other riparian lands. Appellants cite McCoy v. Paxton, 156 Iowa 194, 135 N. W. 1091. That case is not in point because the rights of strangers to the agreement were not there involved. As therein stated, it is competent for adjoining landowners to agree how accreted land shall be divided regardless of the exact legal right they may have therein. But such landowners may not thus divide among themselves accretions to riparian lands belonging to third parties who do not join or acquiesce in the agreement.

■ In apportioning accretion a principal object to be attained is the retention, as nearly as possible, of the former means and right of access to the water. The general rule is to give the several riparian owners a frontage on the new shore proportional to their respective frontages on the old one, connecting the respective points by straight lines. 1 R. C. L. 244, 245; Berry v. Hoogendoorn, 133 Iowa 437, 108 N. W. 923; Hathaway v. Milwaukee, 132 Wis. 249, 111 N. W. 570, 9 L. R. A., N. S., 778, 122 Am. St. Rep. 975.

■ The direction of the original side lines between contiguous riparian tracts has no relation to the direction of the side lines of the respective accretion tracts. For example, the lines separating the various accretion tracts to the riparian lands in this tract east of appellants' land, as established by the survey and decree of 1888, ran approximately southwest at slightly varying angles. Appellee does not contend that de-

cree constitutes an adjudication against appellants. It does, however, aptly illustrate the rule that accretion lines are not extensions of lines previously established on the original riparian lands.

In view of this rule, a riparian owner may not prove title to accretions by merely showing their formation between the extended side lines of his riparian land. In Berry v. Hoogendoorn, supra, at page 441 of 133 Iowa, page 925 of 108 N. W., the court said: "Accretions are not divided up in this way." In the case at bar, as well as in the cited case, the result of following such doctrine would be that another riparian owner "would be entirely cut off from the river."

Consideration of the entire record leads us to the conclusion that appellants failed to sustain the burden assumed by them of showing title or ownership in the specific land here in controversy. Therefore, they were not entitled to have the title thereto quieted in them against others. Nor in the absence of such proof would appellants, in any event, be entitled to the injunctive relief sought by them.

The foregoing conclusions render unnecessary the consideration of appellee's contention that appellants acquiesced in the decree of 1888, and were thereby estopped from claiming said accretions. The decree of the district court is affirmed.—Affirmed.

MILLER, C. J., and HALE, BLISS, SAGER, MITCHELL, WENNERSTRUM, and GARFIELD, JJ., concur.