HAZEL DEERING, by Joyce Deering Volts, her guardian, appellee, v. EDWARD L. GAHM et al., appellants.

No. 49161.

(Reported in 84 N.W.2d 223)

June 26, 1957.

Patrick J. Morrow, of Onawa, for appellants.

Prichard & Prichard, of Onawa, for appellee.

Oliver, J.—Plaintiff is guardian of Hazel Deering, the widow and sole beneficiary under the will of Dr. J. S. Deering, who died January 23, 1954. Plaintiff instituted suit in equity against defendants Edward L., Erma I. and Kenneth E. Gahm to quiet title in her ward, to a tract of riparian land in Monona County, along the east bank of the Missouri River. Defendants counterclaimed to have title thereto quieted in them against plaintiff's claims. Trial resulted in judgment quieting title in plaintiff's ward and this appeal by defendants.

July 8, 1954, Clayton P. Moats and wife conveyed to defendants by warranty deed: S½ SW¼, Section 29, North 45 acres NE¼, Section 32, N½ NW¼ and SE¼ NW¼, Section 32, and by special warranty deed SW¼ NW¼, Section 32, all in Township 83 North, Range 45, West of Fifth P. M., Monona County, Iowa. The land described in the warranty deed totaled 245 acres, that described in the special warranty deed 40 acres. Witnesses refer to the 285 acres as the "deeded land." Defendants assert the legal descriptions in the deeds, which made no mention of accretions thereto, carried with them "all accretions lying west of the west line, or an extension thereof" of the 285-acre tract.

However, on October 5, 1950, said Moats and wife had conveyed to Doctor Deering by special warranty deed "all accretion land lying west of the west line, or an extension thereof," of the 285-acre tract subsequently conveyed to defendants. This deed was not recorded until December 8, 1954, and defendants contend that under their deeds to the 285 acres they were innocent purchasers of the accretion land lying west therefrom, for a

valuable consideration without notice of the prior conveyance to Doctor Deering and that it is of no validity against them. Section 558.41, Code of Iowa, 1954.

The following rough plat shows the deeded lands in question in Sections 29 and 32 and the tract of riparian land in controversy, enclosed by extending west to the Missouri River the boundary lines along the north and south sides of the deeded lands. This riparian tract contains 480 acres or more.

It may be observed that division lines between accretions to lands of different owners along a navigable river are not properly located by merely extending existing lines separating said original lands. Generally, the new lines are located by allotting to each tract of land abutting the old shore line the same proportion of the new as it had of the old shore line and connecting the respective points by straight lines. See Todd v. Murdock, 230 Iowa 1121, 1125, 1126, 300 N.W. 284. The parties here are aware of this and make no contention the arbitrarily fixed lines bordering the north and south sides of the riparian tract are technically correct, or that any judgment in this case will establish such lines as against the rights of others than the parties hereto, their privies and successors.

It will be assumed the 480-acre tract is accretion land. The parties so agree although they do not agree to what land it formed. Forty acres of the deeded land, the SW¼ NW¼ of Section 32, was conveyed to defendants by special warranty deed and was not included in the abstract of title to the land nor in the $10,000 financing mortgage made by defendants. Plaintiff contends the reason this 40 acres was so treated was it was itself accretion land.

A map recently made by government engineers shows the 1890 thalweg line (center of the main channel of the Missouri River) which then ran in a southerly direction through the 285-acre tract. The Iowa bank of the river, marking its farthest encroachment to the east and to which accretions would attach as it retreated to the west, would, of course, be east of center of the main channel. The record does not clearly show the location of this old bank or shore line.

Early in June 1954 Moats listed the 285 acres for sale and the following advertisement appeared in the Omaha World Herald:

"POSSESSION 1954

"Improved 285-acre farm near Onawa, Ia. On graveled road close to paving. No ditch tax. Only $80 per acre. E. W. JOHNSON, Realtor, Fremont, Neb. PAUL ANDERSON, Salesman, Blencoe, Ia."

Defendants first inspected the farm a day or two after the advertisement was published, which they testified they did not see. On June 10 they entered into a contract with Moats, prepared by realtor E. W. Johnson, for its sale to defendants for $22,000. The contract listed the land by sectional subdivisions and recited, "Being (285) acres more or less." It stated the sale was subject to defendants procuring a $10,000 loan from John Hancock Life Insurance Company. This was done. July 8, 1954, defendants received from Moats and wife the warranty deed and special warranty deed, hereinbefore mentioned, to the lands, described therein as certain subdivisions of Sections 29 and 32, which descriptions defendants contend carried with them the 480-acre tract here in question.

Defendants argue the $22,000 purchase price paid by them

was "far in excess of the value of only 285 acres * * *." The record shows the insurance company readily accepted a mortgage upon 240 acres of land as security for the $10,000 loan. This would be more than half the amount paid by defendants for 240 acres of land. Upon that basis the purchase price does not appear excessive.

I. Accretions become part of the upland to which they are attached and, as a general rule, pass to a grantee of such upland, even though not described in the conveyance, at least where there is nothing to indicate a contrary intention. Haynie v. May, 217 Iowa 1233, 252 N.W. 749; Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 S. Ct. 518, 33 L. Ed. 872; 56 Am. Jur., Waters, section 481; 65 C. J. S., Navigable Waters, section 122; 45 C. J., Navigable Waters, section 269.

Iowa Land Title Examinations, 1929, by R. G. Patton, section 85, states: "Unless the instrument shows a contrary intention, accretions and relictions are included in any description of lands to which they are appurtenant."

Barri v. Schwarz Bros. Co., 93 Conn. 501, 507, 107 A. 3, 5, states a conveyance of the upland would presumptively carry with it the riparian rights attached thereto—"Such presumption, however, is a rebuttable one, and if the grantor's intent to confine his grant to the upland * * * is apparent from his deed when read in the light of the attending and surrounding circumstances, effect will, as in other cases, be given to that intent, and the operation of the deed limited accordingly." Lynch v. Kupfer, 134 Cal. App. 652, 26 P.2d 33, 35, states the question is one of the intention of the parties—"But slight evidence is required to show an intention to separate the two."

In Haynie v. May, supra, 217 Iowa 1233, 252 N.W. 749, this court held a contract and deed, which described the upland as NE¼ NE¼ of a Section and stated its acreage, included accretions not mentioned therein.

It is well settled that a riparian owner may separate his upland from accretions thereto by conveying them separately to different grantees or by conveying one and retaining the other. Iowa Land Title Examinations, 1929, R. G. Patton, section 85; Todd v. Murdock, 230 Iowa 1121, 300 N.W. 284; Caples v.

Taliaferro, 144 Fla. 1, 197 So. 861, 146 Fla. 122, 200 So. 378; Walz v. Bennett, etc., 95 Conn. 537, 543, 111 A. 834, 835, 836; Bryant v. Chicago Mill & Lumber Co., D. C. Ark., 120 F. Supp. 463, affirmed 8 Cir., 216 F.2d 727.

When the upland and accretion have been separated and belong to different owners there is no longer a reason for the rule that a conveyance of the upland includes the accretion. Hence, the rule is not applicable in such cases. In the case at bar Moats had conveyed his accretion to Doctor Deering and retained the upland, thus separating them. As to him this separation was effective whether or not the deed to Doctor Deering was recorded. He no longer owned the accretion and had no right to convey it.

Defendants place some reliance upon their testimony Moats and his agents orally represented that the accretion tract went with the deeded land. Witnesses for plaintiff denied this and testified they told defendants the farm consisted of 285 acres, only, and that no accretion went with it. The public representations made in the newspaper advertisement appear to accord with and afford some support for the version given by plaintiff's witnesses. However, had defendants established the representations claimed by them it would have availed them nothing as against Doctor Deering's successor in interest. The question is not what Moats represented or pretended but what he intended. Where separation of the upland and the accretion has rendered the rule inapplicable, representations will not make it again effective. Under the circumstances of this case it must be held the conveyance by Moats of the upland described in his deeds did not include the accretion claimed by defendants.

This conclusion requires the affirmance of the judgment of the trial court and renders unnecessary the consideration of other propositions presented in the briefs.—Affirmed.

All JUSTICES concur.